■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY DAMIANO, Appellant. [619 NYS2d 214] —Crew III, J. Appeal from a judgment of the County Court of Ulster County (Vogt, J.), rendered January 12, 1993, upon a verdict convicting defendant of the crimes of murder in the second degree, reckless endangerment in the first degree and reckless endangerment in the second degree.

On the evening of April 21, 1991 defendant, Eric Birdsall and Jamie Rullan drove in Rullan's car to the Freetown Road overpass in the Town of New Paltz, Ulster County, where they threw rocks from the overpass onto cars traveling on the Thruway below. They then drove to the South Ohioville overpass where they again threw rocks at cars traveling on the Thruway. After throwing "tennis ball" size rocks on the traffic below, defendant and Birdsall placed a 52-pound boulder on a guardrail and pushed it off onto the oncoming traffic. The boulder hit a car driven by Karen Zentner, which caused her vehicle to collide with a guardrail resulting in her death. Defendant was indicted, inter alia, for the crimes of murder in the second degree and two counts of reckless endangerment in the first degree; he was convicted, after a jury trial, of murder in the second degree, reckless endangerment in the first degree and the lesser included offense of reckless endangerment in the second degree. Defendant was sentenced to terms of imprisonment of 20 years to life, 2⅓ to 7 years and one year, respectively.

On this appeal defendant contends, inter alia, that County Court erred in failing to suppress his initial written and oral statements made to the State Police. We disagree. The record reflects that some nine months after Zentner's death, the State Police received information that defendant may have been involved in the incident. As a result, investigators went to defendant's house and advised him that they wished him to accompany them to the State Police barracks to see if he could make an identification from a photographic array regarding an assault in which he was the complainant. The record is clear that defendant voluntarily followed the investigators to the barracks for that purpose. Once at the barracks, however, defendant was given his Miranda warnings and questioned concerning the rock-throwing incidents. Contrary to defendant's assertion, he was not compelled or coerced to forego the inviolability of his home and the "noncoercive

subterfuge" employed by the police did not violate his constitutional rights (see, People v Richardson, 137 AD2d 105, 108).

We reach the same conclusion with regard to the oral statements made by defendant in a police car en route to his arraignment. After giving his written statement, defendant was asked if he would go with the investigators to the crime scene. He agreed upon the condition that he be permitted to speak to his mother. Following a telephone conversation with his mother, defendant changed his mind and refused to speak further to the investigators. Additionally, an attorney telephoned the barracks and advised that he was representing defendant. Thereafter, a uniformed Trooper, Joseph Santiago, who was not involved in the investigative phase of the case and who had no prior contact with defendant, was assigned to transport defendant to the Town of Plattekill Justice Court for arraignment. The normal route taken to the Town of Plattekill Justice Court necessitated that the troop car traverse the Thruway at the South Ohioville overpass. As the vehicle approached that overpass, defendant let out a discernible sigh, at which point Santiago said, "What's up?" In response, defendant uttered extremely incriminating statements concerning the Zentner incident.

Defendant contends that his oral statements were not spontaneous and unsolicited, but rather were triggered by subtly employed inducement (see, People v Maerling, 46 NY2d 289; People v Garofolo, 46 NY2d 592). We disagree. Had defendant been escorted to the arraignment by the investigators in charge of this case, we might be persuaded that given the place and the circumstances of defendant's plaintive sigh that the investigators reasonably should have anticipated that any comment on their part at that point in time might well evoke an incriminatory declaration. However, where, as here, defendant was being escorted to the arraignment by an officer unfamiliar with the circumstances of the investigation and the significance of the South Ohioville overpass, we cannot say that County Court was in error in determining that defendant's statements were spontaneous and not triggered by conduct which reasonably should have been anticipated to evoke such declarations (see, People v Lynes, 49 NY2d 286, 294-295).

Defendant further contends that County Court committed reversible error in submitting a verdict sheet to the jury that contained information other than the simple listing of the counts of the indictment. As to the first count of the indictment, in addition to the phrase "murder in the second de-

gree", the sheet contained the parenthetical phrase "depraved mind murder", and in addition to the phrase "manslaughter in the second degree", it contained the parenthetical phrase "reckless endangerment". Depravity and recklessness are elements of each of the crimes charged under count one of the indictment and it has been held repeatedly that a trial court may not, absent the consent of the parties, "give the jury a verdict sheet that, in addition to listing the counts, also lists some of the statutory elements of the counts" *(People v Spivey,* 81 NY2d 356, 361; *see, People v Sotomayer,* 79 NY2d 1029, 1030; *People v Kelly,* 76 NY2d 1013, 1014-1015). Accordingly, there must be a new trial as to the first count of the indictment charging defendant with murder in the second degree.

We have considered defendant's remaining contentions and find them to be without merit.

Mikoll, J. P., Casey and Yesawich Jr., JJ., concur. Ordered that the judgment is modified, on the law, by reversing so much thereof as convicted defendant of the crime of murder in the second degree; matter remitted to the County Court of Ulster County for a new trial on that charge; and, as so modified, affirmed.