OPINION OF THE COURT
Ciparick, J.
CPL 310.20 (2) provides that jurors may take a "written list prepared by the court containing the offenses submitted to the jury by the court in its charge and possible verdicts thereon” into the jury room when they conduct their deliberations. When the jury requests further instruction regarding the statutory definition or elements of a charged offense, CPL 310.30 allows the court, with the consent of the parties, to provide the jury with a copy of the text of the statute. We have consistently held that when counsel does not consent, it is reversible error for the court to provide the jury with a verdict sheet that contains statutory text or lists elements of the crimes charged in the indictment (see, People v Spivey, 81 NY2d 356; People v Johnson, 81 NY2d 980; People v Taylor, 76 NY2d 873; People v Kelly, 76 NY2d 1013; People v Nimmons, 72 NY2d 830; People v Sanders, 70 NY2d 837). The primary issue, presented by the People’s appeal, is whether, in the absence of the parties’ consent or an objection by counsel, it is reversible error for the court to provide the jury with a verdict sheet that contains statutory elements or terms of the charged murder offense. The Appellate Division correctly applied our precedents by concluding that this was reversible error. We therefore affirm.
*481 Factual Background
According to the People’s evidence, on April 21, 1991, defendant and two friends positioned themselves on the Freetown Road overpass on the New York State Thruway in New Paltz and hurled rocks down upon the cars travelling on the Thruway. The three then repositioned themselves on the South Ohioville overpass, where defendant and one of the friends, Eric Birdsall, lobbed rocks they described to be the size of tennis balls into the traffic 24 feet below, hitting cars driven by James Carroll and Keith Dibble. In their final and fatal act, defendant and Birdsall heaved a 52-pound boulder down upon the on-coming traffic, smashing the car driven by 22-year-old Karen Zentner. She was killed instantaneously. A jury convicted defendant of murder in the second degree for the death of Zentner, as well as reckless endangerment in the first degree for creating a grave risk of death to Carroll and reckless endangerment in the second degree for creating a grave risk of death to Dibble. Defendant was sentenced to concurrent terms of 20 years to life on the murder count, 2[1]/s to 7 years on first degree reckless endangerment count and one year for the second degree reckless endangerment offense.
The Appellate Division modified the judgment by reversing the conviction on the murder count based on the trial court’s error in submitting a verdict sheet to the jury which parenthetically listed elements of the crime of murder in the second degree and the lesser included offense of manslaughter in the second degree charged under the first count, and remitted for a new trial on the murder count, and otherwise affirmed (see, People v Damiano, 209 AD2d 873). A Judge of this Court granted the People leave to appeal and defendant leave to cross-appeal.
I
The People’s Appeal
The People argue that the Appellate Division erred as a matter of law in reviewing defendant’s unpreserved claim that the trial court committed reversible error by submitting an annotated verdict sheet to the jury, which, defendant alleges, compromised his right to a fair trial (see, People v Cona, 49 NY2d 26, 34). The People concede that the annotated verdict sheet was improper, but contend that a proper objection was a prerequisite to reversal on this basis. The People insist that defendant’s failure to register any objection to this verdict *482 sheet renders his belated challenge not only unpreserved for appellate review, but actually constitutes implicit consent to the annotated verdict sheet, a contention embraced by the dissent. We disagree.
The "statement of charges” submitted to the jury lists the first count as "murder in the second degree” and on the succeeding line is the parenthetical reference "depraved mind murder.” The lesser included offense is set forth in the alternative on the next line and reads "if not guilty, manslaughter in the second degree,” followed by the parenthetical reference "reckless manslaughter” on the subsequent line. Without the parties’ consent, these explanatory parentheticals which refer to depravity and recklessness — elements of the crimes charged pursuant to count one of the indictment — offend the letter of the law (see, CPL 310.30; see also, CPL 310.20 [2]).
As our precedents establish, we strictly construe the express, unambiguous statutory language that the court may only furnish an expanded or supplemental verdict sheet "with the consent of the parties,” and tolerate nothing other than a "statement of charges.” (CPL 310.30; see, People v Spivey, 81 NY2d 356, supra; People v Johnson, 81 NY2d 980, supra; People v Kelly, 76 NY2d 1013, supra; People v Nimmons, 72 NY2d 830, supra; People v Owens, 69 NY2d 585, 590.)[1] In accordance with this provision, we have held that the submission, over counsel’s objection, of selected portions of statutory text or the text itself constitutes error as the nature of the jury’s role is fact finding, not interpretation of the applicable legal terms (see, People v Owens, 69 NY2d, at 591, supra; People v Taylor, 26 NY2d, at 874, supra). As a general matter, any potential prejudice to the deliberative process arising from the jurors’ consideration of statutory material cannot be evaluated because there is no record of their deliberations (see, People v Owens, 69 NY2d, at 591, supra; see also, Schwarzer, Communicating with Juries: Problems and Remedies, 69 Cal L Rev 731).
CPL 310.30 demands the parties’ consent to references to statutory terms or elements on a verdict sheet, for it is trial *483 counsel who are best positioned to assess the usefulness of such references in the deliberative process and/or the prejudice that may inure therefrom. CPL 310.30, together with our interpretive jurisprudence, collectively the "doctrinal underpinning” decried by the dissent, delineates the procedures to handle jury requests and the scope of statutory material appropriately provided to a jury (see, e.g., People v Moore, 71 NY2d 684, 688; People v Mehmedi, 69 NY2d 759, 769, rearg denied 69 NY2d 985; People v Nimmons, 72 NY2d 830, supra; People v Sanders, 70 NY2d 837, supra; People v Owens, 69 NY2d 585, supra; see also, People v Tucker, 77 NY2d 861). These procedures devolve from the recognized decisive function of jury deliberations, the critical role materials taken into the jury room can play in the deliberative process, and the fact that trial counsel is best equipped to assess the value of materials provided to the jury which are not expressly authorized by statute (see, e.g., People v Young, 79 NY2d 365; People v Sotomayer, 79 NY2d 1029; People v Taylor, 76 NY2d 873, supra; People v Brooks, 70 NY2d 896; People v Owens, 69 NY2d 585, supra).
Thus, when the court determines that listing statutory elements or terms of the crime — whether as labels or a shorthand for statutory text — on the verdict sheet will aid the jury in their deliberations, the court must permit counsel to review the annotated verdict sheet and obtain counsel’s consent prior to submitting it to the jury. This will ensure compliance with the statutory mandate of CPL 310.30, and the "consent of the parties,” contemplated both by CPL 310.30 and our decisional authority (see, People v Spivey, 81 NY2d, at 361-362, supra; People v Sotomayer, 79 NY2d, at 1030, supra; People v Taylor, 76 NY2d 873, supra; People v Nimmons, 72 NY2d 830, supra; People v Sanders, 70 NY2d, at 838, supra). In addition, it provides documentation on the record. Likewise, an objection, where advised, could be recorded (see, People v Johnson, 81 NY2d, at 982, supra; People v Kelly, 76 NY2d 1013, supra; People v Brooks, 70 NY2d, at 897, supra; People v Owens, 69 NY2d, at 591, supra), preempting the speculation precipitated by a silent record. In this regard, we commend the practice of counsels’ initialing the verdict sheet after the trial court presents it for their review.
That the dissent deems rejection of the annotated "statement of charges” in this case a "theoretical flaw,” based on its belief that the Trial Judge’s intentions were benign — aimed at assisting the jury — and its perception that there was no risk that the jurors would misconstrue or reinterpret the paren *484 thetical statutory references, simply ignores the patent statutory violation uniformly repudiated by our precedents. Innocuous though the labels may look, especially in appellate hindsight, there is no room for selective definitional terms or labels comprised of statutory text where consent of the parties is lacking.
Under the circumstances reflected in this record, the lack of an objection to the annotated verdict sheet by defense counsel cannot be transmuted into consent, as the People and the dissent argue. Rather, a fair and unadorned reading of the record reveals that after the jury sent two notes requesting reiteration of the definition of the charges in the case, the court, in the presence of defendant, his counsel and the prosecutor, repeated the charges and twice indicated its intention to submit a "statement of charges” to the jury to assist in the deliberations. The record is barren of any colloquy pertaining to the court’s presentation of the "statement of charges” to the parties or a recitation of the substance of the verdict sheet. In fact, there is not even a transcript reference recording the court’s actual submission of the verdict sheet to the jury; the verdict sheet simply contains the marking "Court Exhibit 4.” It is the People who bear the burden on this appeal of demonstrating what the record reflects; their failure to satisfy this burden cannot be overcome by the dissent’s reading of the record, which would work to defeat the clear statutory command.
Notwithstanding the dissent’s proposed reconstruction of the sequence of notes emanating from the jury’s deliberations hypothesizing when the annotated "statement of charges” was submitted, we will not engage in appellate speculation to recreate what the record simply does not reflect or suggest. It is not the function of appellate courts to elevate "inescapable inferences” to fact, rather we accord the facts contained in the record their due. Thus, just as appellate ruminations cannot change the fact that there is no officially marked Court Exhibit 1 or dispel the possibility that Exhibits 4 and 5 were marked simultaneously, we cannot construe defense counsel’s silence as the equivalent of consent to the annotated verdict sheet on this record. Nor is there any force to the dissent’s suggestion that the Trial Judge, by twice promising that a "statement of charges” would be forthcoming, put defense counsel on notice sufficient to compel a prospective objection; an appellate court cannot presume defense counsel should have guessed that the "statement of charges” would contain annotations.
Finally, we reject the dissent’s attempt to seek refuge in harmless error as an alternative approach to abrogate the *485 statutory mandate, and diminish the cogency of our decisions strictly construing this provision.[2] The submission of the annotated verdict sheet, not consented to by counsel, cannot be deemed harmless (see, People v Owens, 69 NY2d, at 592, supra; People v Wood, 66 NY2d 374, 379; see also, People v Sanders, 70 NY2d, at 838, supra). We cannot assess the effect of these annotations on the deliberative process; the dissent’s suggestion— based on the jurors’ note that tracked the first parenthetical reference on the verdict sheet — that these circumscribed labels simplified or clarified the charges is pure conjecture. The repeated requests for reiteration of the same charges is just as likely attributable to confusion. As any attempt to evaluate the impact of these annotations is necessarily predicated on speculation about the thought processes of the jurors, a harmless error analysis is inappropriate (see, Klein v Harris, 667 F2d 274, 291; see also, People v Kelly, 76 NY2d, at 1014, supra). The empirical verification of the efficacy of our interpretation of CPL 310.30 is a matter the Legislature is appropriately charged with addressing.
Accordingly, we conclude that it was reversible error for the trial court to submit the annotated verdict sheet to the jury without the consent of counsel, and defendant is entitled to a new trial on the murder count.
II
Defendant’s Cross Appeal
Defendant’s principal contention is that the courts below erred in failing to suppress statements he made to the State Trooper who transported him to court for arraignment. Defendant vigorously objects to the suppression court’s finding that his remarks were spontaneous.
The suppression court opined that defendant voluntarily followed police investigators in his own car to the police barracks. Five minutes after he was shown to an interview room, *486 two investigators introduced themselves to defendant, advised him of his Miranda rights and indicated they wanted to talk with him about the Zentner homicide (see, Miranda v Arizona, 384 US 436). Defendant did not decline to talk, nor did he request counsel. Approximately two and one-half hours later, defendant described what happened on the night Zentner was killed, which statement was reduced to a writing signed by defendant. Not until after he signed the statement did defendant ask to call his mother, who instructed him to say nothing to the police and advised him that she would secure an attorney. Thereafter, defendant refused to cooperate and would not agree to visit the crime scene.
An hour and a half after defendant’s conversation with his mother, a different officer not connected with the homicide investigation was directed to transport defendant to court for arraignment. The direct route to the court passed the crime scene. Upon the officer’s approach to the South Ohioville overpass, defendant emitted a sigh, prompting the officer to query "what’s up.” The suppression court ruled that defendant’s ensuing remarks explaining his involvement in the Zentner homicide were "completely spontaneous” and admissible. The suppression court held that the statements were admissible "irrespective” of whether the transporting officer knew the attorney secured by defendant’s mother had "entered the picture,” an allegation the court found was never established.
The Appellate Division affirmed, stating that "where, as here, defendant was being escorted to the arraignment by an officer unfamiliar with the circumstances of the investigation and the significance of the South Ohioville overpass, we cannot say that the [suppression court] was in error in determining that defendant’s statements were spontaneous and not triggered by conduct which reasonably should have been anticipated to evoke such declarations” (People v Damiano, 209 AD2d, at 874, supra).
This undisturbed finding of spontaneity, which is factually supported on this record, limits our review power (see, People v Rivers, 56 NY2d 476, 480, rearg denied 57 NY2d 775; People v Lynes, 49 NY2d 286, 294; People v Leonti, 18 NY2d 384, 389, cert denied 389 US 1007). Unless there is no possible view of the evidence that would support the determination of the lower courts, we are bound by the finding of the suppression court (see, People v Leonti, 18 NY2d, at 389-390, supra). Here, we cannot say, as a matter of law, that defendant’s statements were the subject of any improper elicitation by the *487 transporting officer as would cast doubt upon the finding of genuine spontaneity. Defendant was not obligated to respond to the officer’s innocuous, nonprovocative question in any manner. Neither his right to counsel nor his right to remain silent was abridged, and there is no basis for disturbing the affirmed finding.
Defendant’s further claim that it was error for the trial court to send the 52-pound boulder into the jury deliberation room pursuant to their written request without first advising defendant and counsel is specious. CPL 310.20 (1) provides that upon retiring to deliberate, jurors may take with them ”[a]ny exhibits received in evidence at the trial which the court, after according the parties an opportunity to be heard upon the matter, in its discretion permits them to take.”
The 52-pound boulder was received in evidence after defense counsel had an opportunity to voir dire the investigator who retrieved the boulder from the back of Zentner’s crushed automobile. The trial court overruled counsel’s sole objection, which was directed to the chain of custody, not to any prejudice the physical presence of the boulder might cause. It is uncontroverted that the boulder was present in the courtroom for the jury to view throughout the trial and was repeatedly referred to during the trial testimony of the investigator who recovered it from the car and during the summations.
At the conclusion of the trial, the court, exercising the discretion accorded it pursuant to CPL 310.20 (1), advised the jury that all exhibits, other than one or two received for limited purposes, would be available for inspection in the jury deliberation room. The final portion of the court’s charge instructed the jury that the exhibits would not automatically be sent into the jury room but upon their request would immediately be provided. The court then excused the jury to hear any exceptions and additions to the charge. Defense counsel did not object or request any supplemental instruction regarding the boulder (see, CPL 310.20 [1]). Therefore, when the jury sent a note requesting the boulder, it was not error for the trial court to provide the boulder to them (see, People v Moore, 71 NY2d, at 686-687, supra).
Defendant’s reliance on People v O’Rama (78 NY2d 270) is misplaced. The note sent by the jury simply requested the boulder, which both the jury and counsel were apprised was available for inspection upon request; the note did not request any substantive information to implicate the notice procedures outlined in O’Rama. Indeed, other than the production of the boulder, the note called for no other response.
*488 Defendant’s remaining contentions are devoid of merit.
Accordingly, the order of the Appellate Division should be affirmed.

. Contrary to the implication by the dissent, our holding here in no way condemns annotated verdict sheets. To be sure, when counsel approve of the labels or textual references on the verdict sheet, the jurors, the parties and the court are well served, as the Legislature intended by enacting CPL 310.30. As noted by the dissent, the Legislature codified existing trial practice (see, dissenting opn, at 503), but with the significant proviso that counsel must consent to an expanded verdict sheet. No legal arguments are presented here which require that we abandon our established construction of this statutory provision in this factually disturbing case.

. The dissent’s reliance on People v Piazza (48 NY2d 151) to support a prejudice evaluation is unavailing. There, the verdict sheet comported with CPL 310.20 (2), and it was the form of the court’s listing of the charges that defendant challenged on appeal as unduly emphasizing the options of guilt, not the substantive nature of the charges themselves, as challenged here. Similarly, the dissent’s proposition that the absence of consent does not violate CPL 310.20 (2) misconstrues the nature of the error caused by the submission of the annotated verdict sheet. It is because the annotations contain statutory terms or elements that the consent component of CPL 310.30 is implicated.