■ PATRICIA ZENTNER, as Administrator of the Estate of KAREN M. ZENTNER, Deceased, Appellant, v NEW YORK STATE THRUWAY AUTHORITY, Respondent. [668 NYS2d 735] —Mercure, J. P. Appeal from a judgment of the Court of Claims (McNamara, J.), entered September 12, 1996, upon a decision of the court in favor of the State Thruway Authority.

Claimant's decedent, Karen M. Zentner, died on April 21, 1991, the victim of a senseless random homicidal act. Zentner

was operating an automobile on the Thruway in the Town of New Paltz, Ulster County, and as she approached the South Ohioville bridge overpass, Jeffrey Damiano, Eric Birdsall and James Rullan stood above. Damiano and Birdsall placed a 52-pound boulder on the guardrail and pushed it off onto the oncoming traffic. The boulder struck the windshield of Zentner's car, causing her death (see, People v Birdsall, 215 AD2d 878, lvs denied 86 NY2d 840, 88 NY2d 933; People v Damiano, 209 AD2d 873, affd 87 NY2d 477).

Claimant thereafter brought this wrongful death action against the State Thruway Authority, alleging liability based upon the Authority's negligence in failing to have protective screening in place on the overpass. The matter proceeded to trial upon the theories that the Authority was aware of rock throwing throughout the highway system, from bridges in the subject section of the Thruway and, in fact, from the very bridge involved in Zentner's death. Concluding that the Authority had discharged its duty to maintain the roadway in a reasonably safe condition for those traveling thereon, the Court of Claims determined that the Authority was not responsible for Zentner's death and dismissed the claim. Claimant appeals.

We affirm. We are unpersuaded by claimant's central contention, that the Court of Claims erred in limiting claimant's theory of liability to one premised upon the Authority's failure to undertake a system-wide study of the need for protective screening of Thruway overpasses and in failing to consider claimant's common-law negligence theory, i.e., that the Authority had notice of a dangerous condition at the South Ohioville bridge overpass and failed to take any action to remedy it, which failure was a proximate cause of Zentner's death.

At trial, claimant first produced retired State Police Sergeant Ernest Nadler, who testified concerning a March 7, 1989 report he filed, conveying his safety concerns with regard to incidents of thrown debris over a two-year period at overpasses situated in urban areas at mile markers 63.1 and 63.8 and recommending the installation of lighting and fencing at those sites. Notably, the evidence showed that the South Ohioville bridge overpass was in a rural area some 10 miles north of the subject sites, and neither Nadler nor his report addressed any similar problem at the South Ohioville bridge overpass.

Ronald McEckron, a senior traffic supervisor with the Authority, acknowledged receiving the Nadler report and passing it along to the Authority's chief engineer. He also testified that there were no written standards for determining the need for overpass protective screening, but that safety and rock

throwing were factors considered on a case-by-case basis. Claimant also called Raymond MacKay, a retired Authority engineer who, through the late 1980s and up to the time of the subject occurrence, was the superintendent of Thruway maintenance. MacKay testified that only 52 of the Thruway's 440 bridges had protective screening; two thirds of them were in the metropolitan New York City area, approximately one third in the Buffalo metropolitan area and three in Albany.

We first conclude that, substantially all of claimant's trial evidence having been directed to the Authority's overall policy and practices concerning the use of protective screening on Thruway bridges, the Court of Claims cannot be faulted for devoting most of its analysis to that subject area. It is also our view that the record does not support a finding that the Authority's failure to take any action with regard to the South Ohioville bridge overpass constituted negligence. On this issue, the relevant trial evidence showed that of 313 overpass incidents reported during the 39-month period preceding the instant occurrence, only three took place at this location: youths throwing eggs on May 15, 1988, a rock-throwing investigation on September 5, 1988 and an incident described only as "windshield broken from overpass" on August 23, 1989. In view of the evidence that no serious injuries had ever resulted from material dropped or thrown from overpasses during the entire 35-year history of the Thruway and that the South Ohioville bridge overpass conformed with all policies and procedures in effect as of April 21, 1991, we perceive no valid basis for disturbing the Court of Claims' finding that the reported incidents by no means mandated the placement of protective screening on the overpass. In fact, in the prioritization of Thruway safety projects, bridge fencing falls behind a number of other projects and is given a low rating on the engineering considerations of probability of occurrence and risk of consequence. Even within the area of bridge fencing, the evidence showed there to be many Thruway overpasses with a greater need for protective screening, due to their location and pedestrian traffic, than the one at issue here.

Claimant's additional contentions have been considered and found unavailing.

Crew III, White and Spain, JJ., concur.

Peters, J. (dissenting). While I agree that a system-wide study of the need for protective screening is not a benchmark standard, I am convinced that the utter failure of the State Thruway Authority to accumulate and analyze data regarding overpass trajectories prevents a finding that it discharged its duty to maintain the roadway in a reasonably safe condition.

The Authority's assertion that the need for overpass protective screening was assessed on a case-by-case basis is belied by the evidence. No such assessment can occur if reportage of incidents to the Authority is not required by the agency which polices the road. As this record reveals that the very tragedy which befell Karen M. Zentner was predicted by law enforcement agents, foreseeability was shown. As recently reiterated by the Court of Appeals, " '[w]hen the intervening, intentional act of another is itself the foreseeable harm that shapes the duty imposed, the defendant who fails to guard against such conduct will not be relieved of liability when that act occurs' " (*Bell v Board of Educ.*, 90 NY2d 944, 947, quoting *Kush v City of Buffalo*, 59 NY2d 26, 33).

Ordered that the judgment is affirmed, without costs.