**Herman D. SCHRAMM, Petitioner,**

v.

**Frank IRVIN, Respondent.**

**No. 97–CV–252H.**

United States District Court,
W.D. New York.

April 2, 1998.

Herman D. Schramm, Alden, NY, pro se.

Kimberly A. Phelan, Erie County District Attorney's Office, Buffalo, NY, Nancy A. Gil-ligan, Assistant District Attorney, Buffalo, NY, for Respondent.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, the petition is denied.

## *BACKGROUND*

On December 1, 1987, petitioner was indicted by an Erie County Grand Jury for Murder in the Second Degree under N.Y. Penal Law § 125.25(1),[1] Assault in the First Degree under N.Y. Penal Law § 120.10(1),[2] and Criminal Possession of a Weapon in the Third Degree under N.Y. Penal Law § 265.02(1).[3] Those charges arose out of a stabbing that resulted in the death of Emmitt O'Grady and serious injuries sustained by Robert Nelson on October 11, 1987.

On February 23, 1989, following a six-day trial, the jury returned a verdict acquitting petitioner of Murder in the Second Degree, but finding him guilty of the lesser included offense of Manslaughter in the First Degree (N.Y. Penal Law § 125.20).[4] The jury also

1. N.Y. Penal Law § 125.25(1) provides:

A person is guilty of murder in the second degree when:

1. With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution under this subdivision, it is an affirmative defense that:

(a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime; or

(b) The defendant's conduct consisted of causing or aiding, without the use of duress or deception, another person to commit suicide. Nothing contained in this paragraph shall constitute a defense to a prosecution for, or pre-clude a conviction of, manslaughter in the second degree or any other crime. . . .

2. N.Y. Penal Law § 120.10(1) provides:

A person is guilty of assault in the first degree when:

1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument. . . .

3. N.Y. Penal Law § 265.02(1) provides:

A person is guilty of criminal possession of a weapon in the third degree when:

(1) He commits the crime of criminal possession of a weapon in the fourth degree as defined in subdivision one, two, three or five of section 265.01, and has been previously convicted of any crime. . . .

4. N.Y. Penal Law § 125.20 states:

A person is guilty of manslaughter in the first degree when:

found him guilty of Assault in the First Degree and Criminal Possession of a Weapon in the Third Degree. On January 5, 1990, following lengthy post-conviction proceedings, petitioner was sentenced to a prison term of 12½ to 25 years on the manslaughter charge, and 4 to 8 years on the assault charge, to run consecutively. The court also imposed a term of 3½ to 7 years for the weapons charge, to run concurrently with the other terms.

Petitioner appealed this sentence to the Appellate Division, Fourth Department. He made the following arguments on direct appeal:

1. Prosecutorial misconduct; [5]
2. Denial of effective assistance of counsel;
3. Defective jury charges with regard to the defense of justification; and,
4. Harsh and excessive sentence.

(*see* Brief for Appellant, Item # 5, Exhibit B).

On April 26, 1991, the Fourth Department unanimously affirmed petitioner's conviction. *People v. Schramm*, 172 A.D.2d 1048, 569 N.Y.S.2d 303 (4th Dept.1991). The court found that petitioner was not deprived of effective assistance of counsel. In particular, the Court held that trial counsel's decision not to further investigate petitioner's defense of justification constituted "trial tactics and strategy," not ineffective assistance of counsel. *Id.* The court also found that the in-

1. With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or
2. With intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in paragraph (a) of subdivision one of section 125.25. The fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subdivision; or
3. He commits upon a female pregnant for more than twenty-four weeks an abortional act which causes her death, unless such abortional act is justifiable pursuant to subdivision three of section 125.05; or

stances of prosecutorial misconduct were either "unpreserved for review, or were cured by the court in sustaining defense counsel's objections and giving curative instructions to the jury." *Id.* The court found that questions regarding the jury charges were unpreserved, and in any event the charge "properly stated applicable law". *Id.* Finally, the court reviewed petitioner's other claims and found them to be without merit. *Id.*

On August 9, 1991, the New York State Court of Appeals denied leave to appeal *People v. Schramm*, 78 N.Y.2d 974, 574 N.Y.S.2d 954, 580 N.E.2d 426 (1991).

Before petitioner was sentenced, he moved at least twice to set aside the verdict under N.Y. Criminal Procedure Law § 330.30. Petitioner raised the grounds of prosecutorial misconduct, newly discovered evidence and improper jury instructions, but the court denied these motions.

In March, 1992, petitioner filed a motion to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ch. 440. On November 27, 1992, Erie County Court Judge Timothy Drury denied the motion in all respects. On May 26, 1993, the Fourth Department denied petitioner's application for a certificate granting leave to appeal that denial.

In this petition for habeas corpus relief, petitioner raises arguments similar to those raised in the state court proceedings. In particular, petitioner asserts:

4. Being eighteen years old or more and with intent to cause physical injury to a person less than eleven years old, the defendant recklessly engages in conduct which creates a grave risk of serious physical injury to such person and thereby causes the death of such person.

Manslaughter in the first degree is a class B felony.

5. Petitioner alleged that the specific misconduct included improperly using his silence against him on cross-examination and in summation; the prosecutor's comments that petitioner's defenses were fabrications; the prosecutor's misrepresentation of the testimony and evidence adduced at trial; prejudicial allegations as to petitioner's ownership of weapons; impermissible appeals to juror's emotions; improper introduction of "moral and religious law;" and, improper discussion of the law.

1. Denial of effective assistance of trial counsel under the Sixth Amendment;

2. Prosecutorial misconduct; and,

3. Denial of a fair trial.

Respondent's memorandum of law urges this court to deny the petition, in part due to procedural default that bars some of petitioner's claims, but, generally, because the claims each have no merit.

## DISCUSSION

### I. Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court held that in order to prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy a two-prong test. First, the petitioner must show that his attorney's performance was deficient in that it "fell below an objective standard of reasonableness." *Id.* 466 U.S. at 687–88. Second, the petitioner must prove that the deficient performance prejudiced the defense. *Id.* at 669. The second element requires petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

In this case, petitioner claims that his trial counsel was ineffective because he failed to pursue the investigation of evidence supporting a justification defense, failed to object to the jury verdict sheet, and failed to object to the prosecutor's remarks during summation. For the reasons set forth below, none of these arguments are convincing.

### A. Investigation of Missing Evidence

Petitioner's primary contention that he was deprived effective assistance of counsel stems from trial counsel's failure to investigate petitioner's claims that he took a gun from the victim Nelson and hid it in a sewer. In the early morning hours of October 11, 1987, the day of the stabbings, petitioner and his wife stopped at several bars. At the last one, the unusually crowded Blarney Castle in South Buffalo, Robert Nelson greeted petitioner from a corner. Nelson was seated with Emmitt O'Grady. The testimony varies here, but petitioner testified that Nelson in-

sulted petitioner's wife, and when petitioner went to hit him, he saw, or thought he saw, Nelson begin to pull out a gun. Petitioner testified that he pulled out a knife and stabbed Nelson while taking a gun from him. Petitioner testified that, all in the same movement, he also stabbed O'Grady, who was attacking him over his back. O'Grady died as a result of the stab wound, and Nelson suffered a serious injury.

In contrast to petitioner's version of events, Nelson testified that petitioner came over to the corner and was asking who was sleeping with his wife and then commenced the knife attack. Others in the bar testified that they saw petitioner's arm moving as if he were punching O'Grady. No one else saw Nelson with a gun.

After the stabbing, petitioner and his wife left the bar and drove four blocks to her home Petitioner testified that while his wife looked for a parking spot, he took out Nelson's gun, wiped it clean of fingerprints, and dropped it in a nearby sewer drain. He was arrested the next afternoon. Petitioner met his attorney, Robert Goldstein, within two weeks of his arrest and told him about the gun.

In the summer of 1988, petitioner was still in jail awaiting trial and he continued to insist to counsel that he had thrown the gun in the drain. Goldstein hired a private investigator to look for the gun. The investigator went to the sewer and looked in, but did not find the gun. About a week later, the investigator called the sewer authority and asked how he could get to see what was down in the sewer. An unidentified person at the sewer authority told him to call the police and ask them to help search the drain. The investigator reported this to counsel, who decided that it was best not to pursue this search with police intervention. Counsel testified at a post-conviction hearing that this decision was based on his belief that, if the police did not find a gun, the absence of a gun would be used to discredit the defense of justification.

After the trial, petitioner continued to insist that he had hidden a gun in the sewer. Finally, a sheriffs investigator found a gun in

the sewer. Petitioner moved to set aside the verdict on the basis of this new evidence. The trial court denied petitioner's motion, finding that introducing the gun into evidence would not have changed the verdict, because the gun could not be positively linked to the victim.

■ Petitioner argues that trial counsel was ineffective because a more thorough investigation would have located the gun, and it would have provided stronger evidentiary support for the justification defense. "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to *facts relevant to the merits of the case and the penalty in the event of conviction.*" *Sims v. Livesay,* 970 F.2d 1575, 1780–81 (6th Cir. 1992) (citing American Bar Association Standards for Criminal Justice, Standard 4–4.1, at 4–53 (2nd ed. Supp.1986)). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make *a reasonable decision that makes particular investigations unnecessary.'*" *Id.* (citing *Strickland, supra,* 466 U.S. at 690–91).

*Livesay* involved a murder in which defense counsel failed to investigate the claim that the victim was shot through a quilt on her bed. The defense failed to introduce the quilt into evidence. An F.B.I. report that was available prior to the trial showed powder burns on the quilt. Such evidence would have contradicted the prosecutor's theory that defendant shot the victim from a distance. The Sixth Circuit stated: "We discern no strategy in [defense counsel's] failure to investigate the role of the quilt, only negligence. Therefore, we are of the opinion that counsel's failure to investigate key evidence may not be excused." *Sims v. Livesay, supra,* 970 F.2d at 1581.

■ Unlike in *Livesay,* trial counsel here articulated a clear reason why he did not take further steps to locate the gun. His investigator had not found the gun, and he did not want to involve the police in case the search was negative. Moreover, the defense

of justification had other weaknesses. None of the witnesses saw Nelson with a gun, and petitioner testified at a hearing that he wiped the gun to remove fingerprints before he threw it in the sewer. Indeed, the Appellate Division specifically found that, "[a]lthough the gun might have lent some credence to [petitioner]'s testimony, the jury could still have rejected [petitioner]'s claim of self-defense because there was no way to link the recovered gun to the victim." *People v. Schramm, supra,* 172 A.D.2d at 1048, 569 N.Y.S.2d at 303. Under these circumstances, I find that trial counsel acted reasonably, and that petitioner has failed to meet the first prong of the *Strickland* test.

■ With respect to the second *Strickland* prong, I find that petitioner has not demonstrated a reasonable probability that, but for counsel's failure to pursue the missing evidence, the result of the trial would have been different. The proof of petitioner's guilt was overwhelming. Petitioner was seen standing over the victims making motions consistent with the use of a knife. Petitioner in fact admitted that he used the knife. No one other than petitioner testified that they saw Nelson with a gun, that they saw petitioner disarm Nelson during the struggle, that they saw O'Grady grab petitioner from behind, or that they witnessed any other events consistent with petitioner's version of the facts. Simply put, there was no evidence other than petitioner's testimony supporting the justification defense.

Accordingly, I find that petitioner was not denied effective assistance of counsel.

### B. *Improper Use of Verdict Sheet*

Petitioner also claims that he was denied effective assistance of counsel based upon trial counsel's failure to object to the court's use of a verdict sheet which listed the crimes charged and their lesser included offenses, as well as elements of the crimes in parentheses. A separate column on the form was provided for a finding of "guilty" or "not guilty." Petitioner claims that such forms have been condemned because they prevent consideration of the justification defense.

In New York criminal cases, verdict sheets are authorized under N.Y. Criminal Procedure Law § 310.30. *See also, People v. Damiano,* 87 N.Y.2d 477, 482 n. 1, 640 N.Y.S.2d 451, 454 (1996). What the Court of Appeals has condemned was the submission of a verdict sheet over the objections of trial counsel. *See, e.g., People v. Owens,* 69 N.Y.2d 585, 516 N.Y.S.2d 619, 509 N.E.2d 314 (1987). As the Court stated in *Damiano:*

> Contrary to the implication by the dissent, our holding here in no way condemns annotated verdict sheets. To be sure, when counsel approve of the labels or textual references on the verdict sheet, the jurors, the parties and the court are well served, as the Legislature intended by enacting C.P.L. 310.30. As noted by the dissent, the Legislature codified existing trial practice, but with the significant proviso that counsel must consent to an expanded verdict sheet. No legal arguments are presented here which require that we abandon our established construction of this statutory provision in this factually disturbing case.

*People v. Damiano, supra,* 87 N.Y.2d at 482, n. 1, 640 N.Y.S.2d 451, 663 N.E.2d 607.

■ In this case, respondent contends that trial counsel's approval of the verdict sheet was a matter of trial tactics and was not prejudicial to petitioner. In fact, trial counsel consented to submission of this verdict sheet. Counsel stated:

> No, I want what's—my approach to this is what is in the best interests of my client, and I feel that the explanation is in the best interests of my client. So that the various—because there's numerous reduced charges under each count, that there is an explanation, so they can distinguish it and so there's no confusion later on.

(Trial Transcript at 583).

As respondent noted on petitioner's direct appeal, petitioner may actually have benefitted from this verdict sheet, since the jury acquitted him of Murder in the Second Degree and found him guilty of the lesser offense of Manslaughter in the First Degree.

Under these circumstances, counsel's failure to object to this verdict sheet did not fall below the objective standard of practice that trial counsel owed to the petitioner, nor was petitioner prejudiced by the submission of the verdict sheet. *Strickland, supra.* In addition, petitioner has failed to demonstrate a reasonable probability that, but for counsel's failure to object to the verdict sheet, the jury would have returned a different verdict.

Accordingly, I find that petitioner was not denied effective assistance based upon counsel's failure to object to the verdict sheet.

### C. *Failure to Object During Summation*

Petitioner also argues that his trial counsel failed to object to the prosecutor's statements on summation to the effect that petitioner was orchestrating his defense many months after the assault. In particular, the prosecutor referred to petitioner's post-arrest silence as to his justification defense. This issue will be analyzed below under the claim of prosecutorial misconduct.

### II. *Prosecutorial Misconduct*

■ In *Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court held that one effect of the right to remain silent defined in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is to prevent the prosecutor from impeaching a defendant, either on cross-examination or in summation, based upon his post-*Miranda* silence. More recent cases have demonstrated that such prosecutorial misconduct under *Doyle* may be harmless error and not rise to the level of a constitutional violation. *Brecht v. Abrahamson,* 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (harmless error standard in cases involving *Doyle* is "whether the error had a substantial and injurious effect or influence in determining the jury's verdict.").

■ In order to obtain habeas corpus relief on grounds of prosecutorial misconduct, petitioner must demonstrate "that he suffered actual prejudice because the prosecutor's [conduct] had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully,* 41 F.3d 818, 824 (2d Cir.1994). In assessing whether

this standard has been met, the court should consider (1) the severity of the prosecutor's conduct, (2) what steps, if any, the trial court may have taken to remedy any prejudice, and (3) whether the conviction was certain absent the prejudicial conduct. *Id.; see also Tankleff v. Senkowski,* 135 F.3d 235, 252 (2d Cir.1998) (although prosecutor improperly referred to petitioner's failure to produce a witness during summation, petitioner could not demonstrate substantial prejudice as a result).

In this case, although petitioner claims that the prosecutor engaged in misconduct by raising petitioner's post-arrest silence as to his justification defense both during cross-examination and during summation, I am not persuaded that the prosecutor's brief statements rise to the level of prejudice under the cases cited above. As discussed above, the proof of guilt was overwhelming. Accordingly, I find that conviction was certain even absent the prosecutor's references to the missing evidence. Therefore, petitioner is not entitled to habeas corpus relief on the ground of prosecutorial misconduct.

### III. *Denial of a Fair Trial*

Finally, petitioner claims that he was denied his right to a fair trial because the trial judge had previously prosecuted the petitioner and members of his family. However, the record demonstrates that the petitioner waived this objection prior to the trial:

> [DEFENSE COUNSEL]: Your Honor, Mr. Schramm indicates that he does recall having you prosecute a case against him. At this time, since you will be the trier—it's going to be a jury trial and will not be the trier of fact, I've discussed it with him and we have no objection with you sitting as the judge in this case.
>
> THE COURT: Is that true Mr. Schramm?
>
> THE DEFENDANT: Yes. Yes your Honor.
>
> THE COURT: Okay. Let's go ahead with your motion.

(January 11, 1989 Motion Transcript, p. 3).

Accordingly, I find that petitioner's claim of the trial judge's bias lacks merit, and cannot be a basis for granting habeas relief.

### CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED,** and the case is **DISMISSED.** The Clerk of the Court is directed to enter judgment in favor of respondent.

Petitioner has not made a "substantial showing of the denial of a constitutional right," pursuant to 28 U.S.C. § 2253(c)(1) and Fed.R.App.P. 22(b), therefore, a certificate of appealability is not granted.

**SO ORDERED.**