People v Edwards (2022 NY Slip Op 04818)

People v Edwards

2022 NY Slip Op 04818

Decided on August 3, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 3, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
ROBERT J. MILLER
JOSEPH A. ZAYAS
DEBORAH A. DOWLING, JJ.

2013-07791
 (Ind. No. 5010/10)

[*1]The People of the State of New York, respondent,
v
Stephon Edwards, appellant.

Patricia Pazner, New York, NY (Michael Arthus of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Rhea A. Grob, and Rebecca Height of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Michael A. Gary, J.), rendered July 19, 2013, convicting him of criminal sexual act in the first degree (two counts), upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
The defendant was convicted, after a jury trial, of two counts of criminal sexual act in the first degree. The jury acquitted him of a third count, and deadlocked on two other counts, which the Supreme Court dismissed. The charges stemmed from a series of three sexual assaults (one of which involved a codefendant) that allegedly occurred during the early morning hours of June 2, 2010, after the defendant accosted the complainant in Brooklyn, as she was walking home. The codefendant was acquitted of the two charges against him.
During its deliberations, the jury sent a total of 11 notes to the Supreme Court. On appeal, the defendant claims that the court's handling of the notes evinced a general "disregard" for the suggested procedure for receiving and responding to jury notes outlined by the Court of Appeals in People v O'Rama (78 NY2d 270), and resulted in the commission of three mode of proceedings errors. These three errors in particular, the defendant argues, require reversal of his convictions. We disagree.
The Court of Appeals began its analysis in O'Rama with the text of CPL 310.30, "which provides that a deliberating jury may request additional information or instruction with respect to any . . . matter pertinent to [its] consideration of the case" (People v O'Rama, 78 NY2d at 276 [internal quotation marks omitted]). When the court receives such a request, CPL 310.30 further provides, "[it] must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper." The statute, then, "imposes two separate duties on the court following a substantive juror inquiry: the duty to notify counsel and the duty to respond" in a way that is meaningful (People v O'Rama, 78 NY2d at 276).
O'Rama held that the notice to counsel contemplated by the statute "means notice of [*2]the actual specific content of the jurors' request. This is because counsel cannot participate effectively or adequately protect the defendant's rights if this specific information is not given" (People v Nealon, 26 NY3d 152, 156 [citation and internal quotation marks omitted]). In other words, "summarizing the substance of the note" does not suffice under O'Rama (People v Nealon, 26 NY3d at 156); counsel must be informed of the "verbatim" contents of the jury's inquiry (People v Dennis, 192 AD3d 1137, 1138). A failure in this regard amounts to a mode of proceedings error that requires reversal of a conviction regardless of whether there was an objection (see People v Nealon, 26 NY3d at 157), and regardless of whether the court's supposed mishandling of the note may ultimately have been harmless error (see People v Mack, 27 NY3d 534, 540).
This rule applies not only where, as in O'Rama itself, the record clearly demonstrates that counsel was not shown a jury note (see People v O'Rama, 78 NY2d at 275), but also where the record is ambiguous on the issue (see e.g. People v Parker, 32 NY3d 49, 59). Thus, contrary to the ordinary requirement that, on appeal, it is the defendant's burden to provide a record that is adequate to permit review of any claims he wishes to raise (see People v Briggs, 123 AD3d 1051, 1052), it is enough, in the O'Rama context, for the defendant to show that defense counsel might perhaps not have seen a jury note, even when the surrounding circumstances suggest otherwise (see People v Parker, 32 NY3d at 59; cf. People v Silva, 24 NY3d 294, 300).
O'Rama outlined a four-step procedure for addressing substantive jury communications. First, the note should be marked as a court exhibit. Before the jury is returned to the courtroom, the note should be read into the record in the attorneys' presence. At that point, the court should elicit from the attorneys their views as to how the inquiry should be answered. After that, the court should explain how it intends to respond to the note, allowing counsel the opportunity to provide further feedback. Finally, once the jury has been returned to the courtroom, "the judge should read the note to the jury to correct any inaccuracies before providing such requested information or instruction as the court deems proper" (People v Silva, 24 NY3d at 299 [internal quotation marks omitted]).
Still, the Court of Appeals has "frequent[ly] observ[ed] that not every departure from the O'Rama procedure or violation of CPL 310.30 constitutes a mode of proceedings error" (People v Mack, 27 NY3d at 539). Of particular relevance here, O'Rama is only implicated when the jury's inquiry is "substantive" (People v O'Rama, 78 NY2d at 276; see People v Parker, 32 NY3d at 59; People v Mack, 27 NY3d at 536-537).
In the 30 years since O'Rama was decided, the Court of Appeals has explored many aspects of the jury note protocol that was first articulated therein. However, the distinction between what constitutes a "substantive" jury inquiry and what does not continues to defy easy categorization. Consistent with CPL 310.30's express concern with "request[s]" for "further instruction or information with respect to the law," "the content or substance of any trial evidence," or "any other matter pertinent to the jury's consideration of the case," the Court of Appeals has deemed notes to be substantive that request "clarification of a legal term" (People v Williams, 21 NY3d 932, 934) or additional instruction on a particular legal concept (see People v Starling, 85 NY2d 509, 516); or inquire as to how to proceed in the face of an apparent deadlock (see People v Kisoon, 8 NY3d 129, 134-135); or, similarly, report that a verdict has been reached on some counts but that there is "a lot of work to do" on another count (People v Morrison, 32 NY3d 951, 953 [internal quotation marks omitted]).
The Court of Appeals, as well as this Court, have frequently distinguished "ministerial" requests from substantive ones. A range of jury inquiries have been characterized as ministerial, from simple requests for more "jury note sheets" or to take a smoking break (see People v Mack, 27 NY3d at 537 n 1), to directions to dim the lights during the replaying of a video in evidence, or to pause the video at a particular point (see People v Mays, 20 NY3d 969, 971). A jury note requesting to see a report that was not in evidence was likewise deemed ministerial because responding to it simply required informing the jury of that fact (see People v Hernandez, 198 AD3d 465, 466; cf. People v Gough, 142 AD3d 673, 675). In Morrison, the Court of Appeals acknowledged that a jury note "requesting instruction on whether to continue deliberating or to [*3]return the next morning . . . would require only a ministerial response" (People v Morrison, 32 NY3d at 953). The determination of which side of the substantive/ministerial divide a jury inquiry falls should be guided, at the end of the day, by the primary concern of CPL 310.30 (see People v O'Rama, 78 NY2d at 276), which is, as the provision's title suggests, responding to "request[s] for information" (CPL 310.30). With these principles in mind, we turn to the notes at issue in this case.
During the afternoon of the second day of deliberations, the jury sent three notes in quick succession. Jury note 5, which was signed at 3:11 p.m., reported that a juror wanted "to know if she [would] be able to get to her 4:30 p.m. class." This note was never read into the record, but the defendant concedes on appeal that it was "ministerial in nature."
Note number 6 (marked as court exhibit no. 7) was signed less than 20 minutes later, at 3:29 p.m. It stated: "We are still deliberating on charges [the word "charges" was crossed out] [a]ll charges[;] on charge 1 for [the defendant] and charge 1-2 for [the codefendant] have nearly reached a verdict." This note was also not read into the record, but the following notation was made on the court action sheet: "CT. EXH. #7—Still deliberating, verdict almost reached. Judge Gary & attys confer on the note—no other action taken at this time."
Less than 10 minutes after that, the jury signed note 7, which indicated it had reached a verdict on the charges related to the codefendant, but was "still deliberating on all charges for [the defendant]." The Supreme Court reconvened the parties in the courtroom and read this note to them. The jury was then returned to the courtroom and rendered a not guilty verdict on both counts pertaining to the codefendant. The court thereafter advised the jurors that it would allow them to deliberate for approximately 15 more minutes before adjourning for the day.
In the defendant's view, the Supreme Court's failure to read note 6 into the record constituted a mode of proceedings error. We disagree.
Note 6 did not request "further instruction or information with respect to the law, [or] with respect to the content or substance of any trial evidence" (CPL 310.30). Nor did it indicate that the jury was deadlocked or struggling to reach a verdict on any or all of the counts submitted to it, or otherwise apprise the court of a significant development in the deliberations (cf. People v Kisoon, 8 NY3d at 132). All the note conveyed was that the jury was continuing to deliberate on all of the charges, and that they were nearing a verdict on the first count in the defendant's case, as well as the two counts in the codefendant's case. Plainly, then, there was no action for the Supreme Court to take, and, concomitantly, no input or participation from defense counsel was necessary to ensure that the defendant's rights were "adequately protect[ed]" (People v Nealon 26 NY3d at 156 [internal quotation marks omitted]). Note 6 was, in short, not a substantive communication from the jury.
The defendant's argument to the contrary relies primarily on People v Morrison, but the dispositive note in that case communicated far more than note 6 did in this case. The note at issue in Morrison indicated that "the jury ha[d] reached a verdict on two counts but [was] struggling with another count" (People v Morrison, 32 NY3d at 953). Indeed, the note in Morrison stated that the jury was "[n]ot sure what to do" (id. at 955 [Garcia, J., dissenting]). Note 6, by contrast, did not report a verdict or a deliberative struggle with respect to any counts. Note 6, in fact, more closely resembled a request for guidance "on whether to continue deliberating or to return the next morning"—which the Court of Appeals in Morrison acknowledged would "require only a ministerial response" (id. at 953)—since it came on the heels of note 5 informing the Supreme Court that one of the jurors was hoping to leave early that day so that she could attend a class. In light of that request, it made sense for the jury to also give the court an update on the general state of its deliberations—as the time at which the juror needed to leave was approaching—which logically would help the court decide whether permitting them to adjourn early would be appropriate (see People v Hameed, 88 NY2d 232, 240-241; People v Bonaparte, 78 NY2d 26, 30).
Nor is the defendant's reliance on People v Kisoon (8 NY3d 129), or People v Kadarko (14 NY3d 426), availing. The notes at issue in Kisoon reported an apparent deadlock (see People v Kisoon, 8 NY3d at 132) and requested reinstruction on several counts (see id. at 133). [*4]Similarly, the note at issue in Kadarko provided the jury's current vote breakdown on five counts and noted that it was "still divided" (People v Kadarko, 14 NY3d at 428 [internal quotation marks omitted]). Note 6 did not contain information along these same lines.
Notably, when the Morrison case was before the Fourth Department, two notes were at issue—the one addressed by the Court of Appeals, as well as an earlier note, which the jury concluded by indicating that it was "just giving [the court] [its] status" (People v Morrison, 148 AD3d 1707, 1708 [internal quotation marks omitted], affd 32 NY3d 951). That earlier note, the Fourth Department held, did not implicate CPL 310.30 "inasmuch as the jury was not requesting further information or instruction" (People v Morrison, 148 AD3d at 1708 [internal quotation marks omitted]). We conclude that the same is true of note 6 here (see People v Damiano, 87 NY2d 477, 487).
In reaching this conclusion, we are mindful of the Court of Appeals' frequent admonition that courts should be "hesitant to expand the mode-of-proceedings-error doctrine" (People v Mack, 27 NY3d at 540; see also People v Walston, 23 NY3d 986, 991 [Smith, J., concurring]). The defendant, as mentioned, has not identified any case in which a jury note with contents similar to note 6 has been deemed a substantive communication, and we are not aware of any such authority. We therefore decline to expand O'Rama's reach to encompass jury notes that request neither further instruction nor information, and, indeed, cannot be fairly interpreted to require any response from the court at all.
Since note 6 was not a substantive communication, O'Rama's strict rule that defense counsel must be made aware of the note's verbatim contents does not apply (cf. People v Gough, 142 AD3d at 675). The record in this case is clear, however, that defense counsel was at least aware of the essence of the note, since the court action sheet indicates that the attorneys conferred with the Supreme Court regarding the note and decided, quite reasonably, not to take any action in response to it. Nor, for that matter, did defense counsel suggest that any action should be taken by the court when the jury sent its next note, which indicated that it had resolved the charges against the codefendant, but was continuing to deliberate on all of the charges against the defendant.
Finally, even if the portion of note 6 reporting that the jury was nearing a verdict on the first count against the defendant could be considered substantive, there would still be no basis for reversal. Count 1 was the only count submitted to the jury that pertained to the first of the three sexual assaults that the defendant allegedly perpetrated against the victim over a period of several hours. The defendant was ultimately acquitted of that count, and the Court of Appeals has made it clear that an O'Rama error in the handling of a note that pertains to only a particular count or counts does not require the reversal of other counts to which the note does not pertain (see People v Silva, 24 NY3d at 301 n 2; People v Walston, 23 NY3d at 990).
The defendant also contends that the Supreme Court committed mode of proceedings errors in responding to portions of two other jury notes—note 1 and note 8—which both requested to see certain exhibits that had been admitted into evidence.
At the commencement of deliberations, however, defense counsel agreed that the Supreme Court could furnish the jury with exhibits upon its request, without the need for the parties to reconvene. Specifically with respect to the potential review of a surveillance video, the court expressed its preference that the jury be permitted to view the video in the jury room, rather than in the courtroom, "so they can discuss it at their leisure in privacy." Defense counsel consented to proceeding in this manner. Given these consents, the defendant's contention that the court needed to seek counsel's input before responding to the portion of note 1 that requested to see a segment of the surveillance video, as well as still images from the video, is not only unpreserved (see People v Cooper, 193 AD3d 966, 967), but also affirmatively waived (see People v Sampson, 289 AD2d 1022, 1023; cf. People v Headley, 170 AD3d 746, 747). In any event, where a defendant consents beforehand, a court may furnish the jury with evidentiary exhibits without reconvening (see CPL 310.20[1]), and doing so does not "implicate the notice procedures outlined in O'Rama" (People v Damiano, 87 NY2d at 487).
For essentially the same reasons, we reject the defendant's challenge to the Supreme Court's handling of the portion of note 8, which requested to "see the photos of the crime scene." Aside from the consent issue discussed above, the court ultimately "shared the note" with the attorneys and stated, for the record, that the jury had "asked to see the photos of the crime scene." Those photographs, the court added, had been "given to [the jury] already." Defense counsel raised no objection at that point. Thus, even if the court had an obligation to share the portion of the note requesting the crime scene photographs before providing those exhibits to the jury, "the court later corrected itself, without objection or request for further [action] by either party" and there was, accordingly, no mode of proceedings error (People v Kadarko, 14 NY3d at 430). Contrary to the defendant's further contention, there was nothing ambiguous about the request that required input from counsel prior to the court responding.
To the extent the defendant raises issues with the Supreme Court's handling of several other jury notes, he acknowledges that preservation is required as to those notes, since they were read verbatim by the court (see People v Nealon, 26 NY3d at 158), and that any challenges to the manner in which those notes were handled are unpreserved. In any event, the defendant does not contend that the court's responses to those notes were inadequate in any respect, and any other challenge to the court's handling of those notes is without merit.
None of the defendant's remaining contentions warrant reversal. The defendant's contention that certain comments made by the prosecutor in her summation were improper and deprived him of a fair trial is unpreserved for appellate review (see CPL 470.05[2]; People v Nelson, 125 AD3d 58, 65, affd 27 NY3d 361). In any event, the contention is without merit. The challenged remarks were either fair comment on the evidence (see People v Ashwal, 39 NY2d 105, 109), a fair response to issues raised in the defense summation (see People v Galloway, 54 NY2d 396, 399), or not so egregious or pervasive as to have deprived the defendant of a fair trial (see People v Morales, 171 AD3d 945, 947). Moreover, defense counsel was not ineffective for failing to preserve this contention (see People v Gross, 26 NY3d 689, 696; People v Shepard, 171 AD3d 951, 952).
With respect to the Supreme Court's charge, contrary to the defendant's contention, there was a sufficient factual predicate to warrant a jury instruction on the concept of flight as evidence of consciousness of guilt (see People v Robinson, 10 AD3d 696, 696), and the court's instructions on that issue were proper (see generally People v Yazum, 13 NY2d 302, 304). The defendant's other challenge to the charge is unpreserved for this Court's review, and, in any event, without merit (see People v Miller, 64 AD3d 471, 471; People v Garcia, 15 AD3d 151, 152).
The sentence imposed was not excessive (see People v Suitte, 90 AD2d 80).
IANNACCI, J.P., MILLER, ZAYAS and DOWLING, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court