OPINION OF THE COURT
 

 Levine, J.
 

 Defendant was charged with multiple counts of second degree murder (depraved indifference murder) and assault in connection with the unauthorized injection of seven patients with a neuromuscular blocking agent at the hospital at which
 
 *221
 
 he was employed as a nurse, resulting in the deaths of six of them from respiratory failure. At trial, defendant did not deny that he had engaged in such conduct, but attempted to demonstrate that he suffered from a mental illness which precluded him from forming the mental state required for the charged offenses — awareness of a grave risk of death of the patients by reason of his injections. To that end, defendant presented two psychological experts who testified that he suffered from a dissociative disorder which prevented him from recognizing, and thus consciously disregarding, the risks associated with his conduct of injecting patients with an agent that caused respiratory distress. The experts testified that defendant had feelings of extreme inadequacy and sought to create a situation in which he could prove his competence; as an emergency medical technician he had once successfully resuscitated a patient in respiratory distress and when overcome by self-doubt in his responsible position as Charge Nurse, defendant injected patients with an agent that would cause respiratory distress so that he could then participate in the successful heroic efforts to save them. His dissociative disorder, they testified, caused defendant to be unaware that the injections he had given these patients were the cause of their potential respiratory failure and ultimate deaths.
 

 Before Dr. Schwartz, defendant’s psychiatric expert, testified, defense counsel sought a ruling from the trial court that Dr. Schwartz would be permitted to testify that his opinion as to defendant’s mental state was based, in part, on the results of a polygraph examination defendant had undergone. According to defense counsel, it was relevant to Dr. Schwartz’s diagnosis of defendant that during the polygraph examination defendant’s statement that he had not been present when any of the injected patients had died registered as "truthful”, when the facts demonstrated that defendant was actually present during at least one of the patients’ deaths. The trial court ruled that Dr. Schwartz would not be permitted to testify to his reliance on the evaluation of defendant’s responses during the polygraph examination because the appellate courts of New York have consistently held polygraph testing inadmissible as scientifically unreliable. Defense counsel objected to the court’s ruling but stated that Dr. Schwartz would still be called to testify and would simply not refer to the polygraph results. Following examination of defendant’s experts, the People presented the testimony of two psychological experts who were of the opinion that defendant suffered from a
 
 *222
 
 personality disorder but was capable of appreciating the risks and consequences of his actions.
 

 Defendant was ultimately convicted of two counts of depraved indifference murder, one count of second degree manslaughter, one count of criminally negligent homicide and six counts of assault with respect to five of the patients and was sentenced accordingly. The Appellate Division affirmed his conviction and sentence. A Judge of this Court granted defendant leave to appeal, and we now affirm.
 

 I
 

 Defendant argues that County Court erred in prohibiting Dr. Schwartz from testifying that his conclusions were based in part on the results of defendant’s polygraph examination and that the court’s ruling violated his constitutional rights to due process and to present witnesses in his own defense. Because defendant failed to present these constitutional claims to County Court, however, they are unpreserved for this Court’s review.
 

 Alternatively, defendant bases his claim of error on two other grounds, one statutory and one common law. The statute upon which defendant relies is CPL 60.55 which concerns the testimony of a mental health expert regarding the affirmative defense of not responsible by reason of mental disease or defect and provides that the expert "must be permitted to make a statement as to the nature of any examination of the defendant” and "must be permitted to make any explanation reasonably serving to clarify his [or her] diagnosis and opinion” (CPL 60.55 [1]). However, that statute, by its terms, does not apply to this case where defendant did not assert the insanity defense, but sought instead to use psychiatric testimony to negate a necessary element of the offenses charged.
 

 Defendant also relies on the common-law rule that under certain circumstances an expert may base his or her opinion on out-of-court evidence, citing
 
 People v Sugden
 
 (35 NY2d 453). However, as stated in
 
 Sugden,
 
 an expert witness may rely on nonrecord evidence only if it "is of a kind accepted in the profession as reliable in forming a professional opinion” or "comes from a witness subject to full cross-examination on the trial”
 
 (id.,
 
 at 460-461;
 
 accord, People v Jones,
 
 73 NY2d 427, 430;
 
 Hambsch v New York City Tr. Auth.,
 
 63 NY2d 723, 726).
 

 These exceptions thus provide no support for defendant’s position because they specifically incorporate the customary
 
 *223
 
 admissibility test for expert scientific evidence — which looks to general acceptance of the procedures and methodology as reliable within the scientific community
 
 (see, People v Wesley, 83
 
 NY2d 417, 422, citing
 
 Frye v United States,
 
 293 F 1013;
 
 People v Hughes,
 
 59 NY2d 523, 537;
 
 People v Middleton,
 
 54 NY2d 42, 49;
 
 see also, Hambsch v New York City Tr. Auth.,
 
 63 NY2d, at 726,
 
 supra
 
 [to meet the "professional reliability” exception, the out-of-court evidence must be established as reliable]). Because defendant did not demonstrate that polygraph test results are generally accepted by the scientific community as reliable, County Court did not err in excluding defendant’s polygraph results
 
 (see, People v Shedrick,
 
 66 NY2d 1015, 1018 [upholding exclusion of polygraph evidence because it was not generally accepted as reliable by the scientific community],
 
 rearg denied
 
 67 NY2d 758;
 
 see also, Pereira v Pereira,
 
 35 NY2d 301, 306-307;
 
 People v Leone,
 
 25 NY2d 511, 517;
 
 People v Forte,
 
 279 NY 204, 206,
 
 rearg denied
 
 279 NY 788).
 

 Defendant’s alternate claim that County Court erred in ruling on the admissibility of the polygraph evidence without holding a
 
 Frye
 
 hearing is unpreserved. The record demonstrates that defendant did not request a hearing to establish the current acceptance of polygraph testing as reliable or argue that the scientific consensus on this point had changed since such evidence had previously been ruled inadmissible under this standard. In responding to the People’s position that the polygraph evidence must be demonstrated to be generally accepted, defense counsel stated equivocally: "I cannot categorically state that that would be [Dr. Schwartz’s] testimony. I don’t know * * * With regard to it’s
 
 [sic]
 
 inherent unreliability, again, as the — cases seem to state that would go to the weight of the evidence”. Likewise, defense counsel referred to a hearing in the most ambivalent terms stating: "I
 
 would not oppose
 
 preliminary hearings on — outside the presence of the jury to establish [general acceptance]” (emphasis supplied). Additionally, because defendant did not argue below that the grounds upon which this Court had previously rejected polygraph evidence were no longer sound, defendant’s argument on appeal that polygraph evidence has now reached the state of being generally accepted as reliable in the relevant scientific community, is unpreserved.
 

 Neither may defendant avoid the requirement of demonstrating the scientific acceptance of the polygraph test by arguing that the validity of the test results here was not at issue. To the contrary, the polygraph evidence was offered as proof of
 
 *224
 
 the honesty of defendant’s belief, in response to the polygraph examiner’s question, that he was not present when any of the patients he had injected died, and thus to support his defense of being unable to form an awareness of the grave risks associated with his conduct. Therefore, the probative value of this evidence clearly depended on the reliability of the test results.
 

 II
 

 Defendant also argues on appeal that County Court erred in submitting a verdict sheet to the jury that contained identifying explanations of the various charges submitted. As this Court has held, unless the parties consent it is error for a trial court to give the jury an annotated verdict sheet
 
 (e.g., People v Damiano,
 
 87 NY2d 477, 483;
 
 People v Spivey,
 
 81 NY2d 356, 361;
 
 People v Taylor,
 
 76 NY2d 873, 874). The record in this case reveals that defense counsel was shown the verdict sheet before it was submitted to the jury and expressly approved it. Thus, unlike the record in
 
 Damiano (supra),
 
 the trial record in this case establishes that the annotated verdict sheet was submitted to the jury with defendant’s consent and, accordingly, no error in its submission occurred.
 

 Defendant’s remaining contentions are unpreserved or without merit.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Ciparick concur.
 

 Order affirmed.