Frank FIGUEROA, Petitioner,

v.

Robert ERCOLE, Superintendent
of Green Haven Correctional
Facility, Respondent.

No. 10 Civ. 3262.

United States District Court,
S.D. New York.

July 27, 2011.

**562**

Frank Figueroa, Elmira, NY, pro se.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Pro se petitioner Frank Figueroa ("Figueroa"), currently incarcerated at New York State's Elmira Correctional Facility, commenced this action against respondent Robert Ercole, superintendent of New York's Green Haven Correctional Facility (the "Respondent"), where Figueroa was previously incarcerated, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). Figueroa alleges that, for a variety of reasons, his Sixth and Fourteenth Amendment rights were violated during the course of his trial. For the reasons discussed below, Figueroa's Petition is DENIED.

### I. BACKGROUND[1]

#### A. FACTS

On November 26, 2001, Figueroa and Demetrius Brown ("Brown") drove to 304 East 178th Street in Bronx, New York.

The two men exited the car and approached Cecil Pressley ("Pressley") and Jennifer Lopez ("Lopez"), who were standing on the steps in front of the building. Pressley and Brown were drug dealers who operated in different territories. Lopez sold drugs for both Brown and Pressley in their respective areas. Pressley, who expected an altercation told Lopez to run, and she did. After a brief verbal altercation between Brown and Pressley, Figueroa fired a gun twice at Pressley, hitting him in the abdomen and grazing his leg. The second bullet ricocheted, and grazed Lopez's leg as she ran away. After the shooting, Figueroa and Brown walked back to their car and drove from the scene. Lopez returned to Pressley, who was lying on the steps bleeding. Pressley asked Lopez to tell his wife that he loved her.

Shortly thereafter, New York City Police Department officers Benjamin Gottlieb ("Gottlieb") and Lawrence Block arrived on the scene along with an ambulance and emergency medical technicians (the "EMTs"). Gottlieb accompanied Pressley in the ambulance to St. Barnabus Hospital in the Bronx as the EMTs worked to stabilize Pressley's condition. During the ride, Pressley's breathing returned to normal and he appeared lucid. At that time, Gottlieb asked Pressley if he knew who was responsible for the shooting. Pressley replied: "I don't know who did this to me. I don't know nothing." (Resp. Decl. at 3.) The ambulance arrived at the hospital and Pressley was brought into an operating room. Pressley died from the bullet wounds a few hours later.

---

**1.** The factual and procedural summary below is derived from the following documents and any exhibits attached thereto: Petition, dated June 29, 2010; Respondent's Declaration in Opposition to Petition for a Writ of Habeas Corpus, dated February 25, 2011 ("Resp. Decl."); *People v. Figueroa*, 37 A.D.3d 246, 830 N.Y.S.2d 80 (1st Dep't 2007) ("*Figueroa I*"); and *People v. Figueroa*, 8 N.Y.3d 984, 838 N.Y.S.2d 487, 869 N.E.2d 663 (2007) ("*Figueroa II*"). Except where specifically referenced, no further citation to these sources will be made.

## B. PROCEDURAL HISTORY

Figueroa was subsequently charged with: (1) murder in the second degree, in violation of New York Penal Law § 125.25(1); (2) manslaughter in the first degree, in violation of New York Penal Law § 125.20(1); and (3) criminal possession of a weapon in the second degree, in violation of New York Penal Law § 265.03(2). He was tried in New York State Supreme Court, Bronx County (the "Trial Court").

At trial, Figueroa was represented by David Blackstone ("Blackstone"), who moved to enter as a dying declaration Pressley's statement in the ambulance. The Trial Court denied the motion, finding that Figueroa did not establish that Pressley believed he was going to die at the time he made the statement. The Trial Court reasoned that most of Pressley's wounds were internal, that he could not have known their severity, that the external wound would have appeared small in size, and Pressley's breathing had returned to normal at the time of the statement. Therefore, the statement was not admissible as a dying declaration.

Blackstone also moved for a mistrial on the grounds that the conduct of a court officer (the "Court Officer") interfered with the trial's integrity in three ways. First, the Court Officer brought Lopez off the stand and to the back of the court at a break during her first day testifying. While the jury was not present, the Court Officer called Lopez a "bitch" and told her "we will see what happens here." (Petition at 13.) Second, a friend of Lopez reported to the prosecutor that he overheard the Court Officer tell Figueroa's family that he advised Brown not to appear in court that day and that Brown "was always packing." (*Id.*) Finally, when the Court Officer attempted to escort Lopez off the witness stand after her second day testifying, she shouted that she would not accompany him because of the previous day's events. This also occurred while the jury was not present.

In response to Blackstone's motion for a mistrial, the Trial Court conducted an individual voir dire for each jury member to determine whether they were affected by the Court Officer's behavior. The Trial Court determined that no juror was aware of the Court Officer's conduct and concluded that the integrity of the trial had not been compromised. Later in the trial, Blackstone again moved for a mistrial after explaining that he could not obtain sufficient information to determine whether the Court Officer's conduct had interfered with the trial's integrity. Blackstone explained that his attempts to investigate the Court Officer's relationship with Brown had been stymied because the Court Officer had been reassigned to another courtroom and could not now be identified. The prosecution conceded that the Court Officer's behavior affected Lopez, but asserted that it did not influence the jury. The Trial Court denied the second motion for a mistrial.

On August 2, 2004, Figueroa was acquitted of murder in the second degree but convicted of manslaughter in the first degree and criminal possession of a weapon in the second degree.

Figueroa appealed his convictions to the Supreme Court of the State of New York, Appellate Division, First Department ("Appellate Division"), which unanimously affirmed his convictions on February 13, 2007. *Figueroa I*, 830 N.Y.S.2d at 81. The Appellate Division rejected two of Figueroa's claims as unpreserved: (1) that the Trial Court violated his Sixth Amendment right to compulsory process when it did not admit Pressley's statement as a dying declaration; and (2) that he was deprived of his Sixth Amendment right to

effective assistance of counsel when Blackstone failed to introduce Pressley's statement as an excited utterance. The Appellate Division also held that the Trial Court properly rejected Figueroa's motions for a mistrial, finding that the Court Officer's behavior did not have a prejudicial effect on the trial. Subsequently, Figueroa was denied leave to appeal to the New York Court of Appeals ("Court of Appeals"). *See Figueroa II*, 838 N.Y.S.2d 487, 869 N.E.2d at 663.

Following an unsuccessful motion to vacate the judgment, pursuant to New York Criminal Procedure Law § 440.10(1), Figueroa timely filed the instant Petition.

## II. *DISCUSSION*

### A. *LEGAL STANDARD FOR HABEAS RELIEF*

■ As a starting point, the Court notes that Figueroa is a pro se litigant. Accordingly, his submission must be held "to less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (*quoting Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). The Court must construe Figueroa's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (citation omitted). A pro se litigant, however, is not exempt "from compliance with relevant rules of procedural and substantive law." *Boddie v. N.Y. State Div. of Parole*, 285 F.Supp.2d 421, 426 (S.D.N.Y.2003) (*quoting Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)).

#### 1. *Exhaustion*

■ A petitioner in custody pursuant to a judgment of a state trial court is entitled to federal habeas relief only if he has exhausted all available state court remedies. *See* 28 U.S.C. § 2254(b)-(c). A claim has been exhausted if it was fairly presented in state courts, thereby giving the state the "opportunity to pass upon and correct" alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). A petitioner need not have cited "book and verse on the federal constitution" in his claim in state court for the claim to have been exhausted. *Picard*, 404 U.S. at 278, 92 S.Ct. 509. Instead, a petitioner may have fairly presented his claim to state courts through

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Att'y Gen. of the State of N.Y.*, 696 F.2d 186, 194 (2d Cir.1982).

#### 2. *Independent and Adequate State Grounds*

■ A federal court's authority to review a habeas petition also depends on whether the state court adjudicated the petitioner's claims on the merits or on state procedural grounds. *See Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A claim resolved on independent and adequate state procedural grounds is generally not subject to habeas review. *See id.*

■ A claim resolved in state court on the merits, however, may be subject to habeas review. A state court resolves a claim on the merits when it reduces its disposition to a final judgment with res

judicata effect on substantive rather than procedural grounds. *See Sellan v. Kuhlman,* 261 F.3d 303, 311–12 (2d Cir.2001); *see also Castillo v. Walsh,* 443 F.Supp.2d 557, 562 (S.D.N.Y.2006).

### 3. *Substantive Grounds for Federal Habeas Relief*

■ Federal habeas review of state court decisions is governed by the standard set forth in the Anti–Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. §§ 2241–55 ("AEDPA"). AEDPA provides that

> [a] district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). Accordingly, a petitioner must demonstrate that his state court conviction violated federal law. *See DiGuglielmo v. Smith,* 366 F.3d 130, 136–37 (2d Cir.2004) (*citing Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)).

■ Not every alleged violation of federal law, however, will warrant the issuance of a writ of habeas corpus. *See Thurman v. Allard,* No. 01 Civ. 8746, 2004 WL 2101911, at *11 (S.D.N.Y. Sept. 22, 2004). Under 28 U.S.C. § 2254(d) ("§ 2254(d)"), where a state court has decided a petitioner's federal claims on the merits, a court may-grant habeas relief only if the state court's decision either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d).

■ For the purposes of federal habeas review, "clearly established federal law" refers to the holdings, as opposed to dicta, of Supreme Court decisions in effect at the time of the relevant state court decision. *See Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision is "contrary to clearly established federal law" within the meaning of § 2254(d) if a state court decision contradicts relevant Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the Supreme Court." *Id.* at 405–06, 120 S.Ct. 1495. Under this standard, as long as the state court decision applies the correct legal rule to the petitioner's facts, it is not subject to habeas review, even if the federal court would have reached a different conclusion if it were to apply the rule itself. *See id.* at 406, 120 S.Ct. 1495.

■ A state court decision is based on an "unreasonable application of clearly established federal law" if the court correctly identifies the legal rule set forth in governing Supreme Court decisions, but unreasonably applies the rule to the particular facts of the case. *See id.* at 412–13, 120 S.Ct. 1495. A federal court may grant habeas relief only where the state court decision, as it pertains to any issue of federal law, was objectively unreasonable in light of relevant precedent. *See id.* at 409, 120 S.Ct. 1495. In construing and applying federal law, even erroneous state court decisions, if deemed reasonable, will survive habeas review. *See id.* at 411, 120 S.Ct. 1495. However, the state court decision need not be "so far off the mark as to suggest judicial incompetence" before ha-

beas relief may be granted. *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted). Thus, an unreasonable application "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" *Jones v. Stinson,* 229 F.3d 112, 119 (2d Cir.2000) (*quoting Francis S.,* 221 F.3d at 109).

## B. *ANALYSIS*

Figueroa's Petition raises three grounds for relief: (1) that the Trial Court violated his Sixth Amendment right to compulsory process when it did not admit as a dying declaration Pressley's statement in the ambulance; (2) that Blackstone provided ineffective assistance of counsel, in violation of the Sixth Amendment, because he did not (a) seek admission of Pressley's statement as an excited utterance, (b) persuade the Trial Court to admit Pressley's statement as a dying declaration, and (c) investigate the Court Officer; and (3) the Court Officer's conduct violated Figueroa's Fourteenth Amendment right to a fair trial.

### 1. *Dying Declaration Claim*

Figueroa claims that the Trial Court violated his Sixth Amendment right to present a defense, pursuant to the Compulsory Process Clause, when it did not admit Pressley's statement in the ambulance as a dying declaration. The Appellate Division rejected that claim, holding that it was unpreserved because Figueroa failed to satisfy the contemporaneous objection rule, codified in New York's Criminal Procedure Law § 470.05. Specifically, the Appellate Division concluded that "[Figueroa] based his application to introduce the alleged dying declaration entirely on state evidentiary law and never asserted a constitutional right to introduce it." *Figueroa I,* 830 N.Y.S.2d at 81–82. Respondent asserts that the Appellate Division's rejection was based on independent and adequate state grounds that bar federal review of Figueroa's Petition. The Court agrees.

A state ground is independent when it "fairly appear[s] to rest primarily on state procedural law" and is not interwoven with federal law. *Jimenez v. Walker,* 458 F.3d 130, 145 (2d Cir.2006). The Appellate Division's holding was based exclusively on New York's contemporaneous objection rule, which is a valid independent state ground that precludes federal review. *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir. 1999) (denying petition for a writ of habeas corpus because contemporaneous objection rule was an independent and adequate state ground that barred federal review of the petitioner's claim); *see also Bossett v. Walker,* 41 F.3d 825, 829 n. 2 (2d Cir.1994). While the Court of Appeals denied Figueroa's leave to appeal without a written opinion, the Court finds that its decision was based on the same procedural grounds as the Appellate Division's opinion. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (holding that a later decision without written opinion does not silently consider the merits of a claim). Thus, the Court will proceed to review Figueroa's claim only if the independent state grounds are not adequate.

A state ground is adequate when "application of the procedural rule is firmly established and regularly followed in the specific circumstances presented in the case." *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003) (internal quotation marks omitted). To determine whether a state ground is adequate, the Court refers to three guideposts:

(1) [W]hether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance

with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had substantially complied with the rule given the realities of trial and, therefore, whether demanding perfect compliance with the rule would serve a legitimate government interest.

*Id.*

Taking into consideration the three *Cotto* guideposts, the Court concludes that the contemporaneous objection rule is adequate because it is regularly followed in factual circumstances that are similar to Figueroa's case. As an initial point, the Court finds that the first guidepost does not "weigh as heavily" in Figueroa's case "because the lack of a contemporaneous *objection would not, almost by definition,* be mentioned by the trial court." *Id.* at 242. In addition, "consideration of whether perfect compliance would have changed the outcome, is less relevant in evaluating the failure to preserve a claim." *Thomas v. Heath,* No. 10 Civ. 5861, 2011 WL 1849097, at *8 (S.D.N.Y. May 16, 2011) (collecting cases) (internal quotation marks omitted). Consequently, the first guidepost offers little guidance in determining whether the state ground was adequate in Figueroa's case.

Under the second guidepost, New York case law dictates that compliance with the contemporaneous objection rule was demanded in Figueroa's circumstances. The Appellate Division cited a factually indistinguishable Court of Appeals case, which found federal claims unpreserved for direct review because "defendant failed to present these constitutional claims to [the lower] Court." *People v. Angelo,* 88 N.Y.2d 217, 644 N.Y.S.2d 460, 666 N.E.2d 1333, 1334 (1996); *see also Gonzalez v. Scully,* No. 84 Civ. 7385, 1986 WL 3505, at *3 (S.D.N.Y. March 21, 1986) (holding that the petitioner failed to preserve a constitu-

tional claim when he raised only a state law hearsay objection at trial). As such, the state law is adequate under the second guidepost.

Under the third guidepost, Figueroa has not demonstrated that he substantially complied with the contemporaneous objection rule given the realities of trial. Figueroa's trial lasted three days, and the Trial Court held an additional two-day hearing to determine whether Pressley's statement should be admitted as a dying declaration. Yet, Figueroa never raised a Sixth Amendment claim at the trial or hearing. Consequently, the state law is adequate under the third guidepost and the Court concludes that the Appellate Division's decision is based on independent and adequate state grounds that bar federal review of Figueroa's claim.

### 2. Ineffective Assistance of Counsel Claims

Figueroa's Petition raises three claims of ineffective assistance of counsel: Blackstone erred in failing to (1) offer Pressley's statement as an excited utterance; (2) persuade the Trial Court to admit the same statement as a dying declaration; and (3) investigate or intending to investigate the Court Officer's allegedly prejudicial conduct.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Kimmelman v. Morrison,* 477 U.S. 365, 374–75, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). In *Strickland v. Washington,* the Supreme Court established a two-part test to determine whether defense counsel's assistance was ineffective. 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness ... under prevailing norms." *Id.* at 688–89, 104 S.Ct. 2052. Second, the

defendant must show that he suffered prejudice as a result of defense counsel's deficient performance. *See id.* at 693, 104 S.Ct. 2052. Prejudice is established where "there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

However, counsel's competence is presumed and the petitioner must rebut this presumption. *See Kimmelman,* 477 U.S. at 384, 106 S.Ct. 2574. Consequently, "[t]he *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir.2001). Moreover, any "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052. When a trial court finds that defendant's counsel performed such an investigation, it is strong evidence of petitioner's inability to show ineffective assistance of counsel. *See Knowles v. Mirzayance,* 556 U.S. 111, 129 S.Ct. 1411, 1421, 173 L.Ed.2d 251 (2009) ("[Petitioner's] failure to show ineffective assistance of counsel is confirmed by the Magistrate Judge's finding that [counsel] carefully weighed his options before making his decision final; he did not make it rashly." (internal quotation marks omitted)). In addition, it is not necessary for "defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Id.*

### a. *Excited Utterance*

The Appellate Division rejected Figueroa's first ineffective assistance claim, that Blackstone erred when he failed to offer as an excited utterance Pressley's statement that "I don't know who did this to me. I don't know nothing." (Petition at 34.)

 "[D]ecisions as to which arguments to stress, which witnesses to call, which motions to make, and which lines of inquiry to pursue, fall squarely within the ambit of trial strategy and, if reasonably made, cannot support an ineffective assistance claim." *Elgabrowny v. United States,* No. 01 Civ. 162, 2003 WL 22416167, at *7 (S.D.N.Y. Oct. 22, 2003) (internal quotation marks omitted). In Figueroa's case, Blackstone made a reasonable strategic decision to move the Trial Court to admit Pressley's statement as a dying declaration rather than as an excited utterance. After investigating the circumstances of Pressley's statement, Blackstone supported his motion by referencing relevant case law, describing Pressley's injuries, and citing testimony that Pressley asked Lopez to tell his wife that he loved her. This was sufficiently effective to persuade the Trial Court to hold a two-day hearing to consider the statement's admissibility. Although Blackstone's tactical choice was ultimately unsuccessful, the Court "will not second-guess trial counsel's defense strategy simply because the chosen strategy has failed." *United States v. DiTommaso,* 817 F.2d 201, 215 (2d Cir. 1987). Moreover, Blackstone's approach did not "omit … significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Pacheco v. United States,* No. 02 Civ. 4266, 2006 WL 760287, at *3 (S.D.N.Y. Mar. 23, 2006). Consequently, the Court concludes that the Appellate Division's holding that Blackstone's performance did not fall below professional standards was a reasonable application of *Strickland.*

 The Appellate Division also held that Blackstone's performance did not prejudice the outcome of the trial. Even if

Blackstone had sought to introduce Pressley's statement as an excited utterance, the Trial Court would have been unlikely to admit it. An excited utterance must be made "under the immediate and uncontrolled domination of the senses." *People v. Vasquez,* 88 N.Y.2d 561, 647 N.Y.S.2d 697, 670 N.E.2d 1328, 1336 (1996) (*quoting People v. Brown,* 70 N.Y.2d 513, 522 N.Y.S.2d 837, 517 N.E.2d 515, 518 (1987)). After a two-day hearing on the statement's admissibility, the Trial Court concluded that, at the time of the statement, Pressley was "alert and responsive ... [and] in an improve [sic] condition." (Resp. Decl. Ex. 15 at 8.) Figueroa has not established a reasonable probability that Blackstone's failure to raise the excited utterance argument, which the Trial Court would most likely have rejected, changed the outcome of the trial. Thus, the Court concludes that the Appellate Division's application of the second *Strickland* prong was reasonable and the Court rejects Figueroa's first ineffective assistance claim.

b. *Failure to Persuade*

Figueroa's second ineffective assistance claim asserts that Blackstone erred by failing to persuade the Trial Court to admit Pressley's statement as a dying declaration. Figueroa concedes that he did not fairly present the claim to the state courts, but urges the Court to review it in the interest of justice.

Figueroa failed to exhaust this claim and, thus, it is barred. However, even if the Court were to consider it, the Court would conclude that it is without merit. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

 Blackstone made repeated efforts to introduce Pressley's statement into evidence. Figueroa himself acknowledges that:

> [d]efense counsel requested that the statement be admitted as a dying declaration, pointing specifically to Lopez's testimony that Pressley said to tell his wife that he loved her. The court heard further evidence on this matter and issued a decsion [sic] specifically adressing [sic] this issue.

(Petition at 31.) As discussed above, Blackstone conducted a thorough investigation of the issue and successfully moved the Trial Court to hold a hearing on the statement's admissibility. Blackstone's efforts do not fall below an objective standard of reasonableness simply because the Trial Court ultimately concluded that Pressley's statement was not admissible. Effective assistance does not require counsel to win every argument. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052 ("Judicial scrutiny of counsel's performance must be highly deferential ... it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). Because Figueroa has not established that Blackstone erred by failing to persuade the Trial Court to admit Pressley's statement as a dying declaration, his second ineffective assistance claim fails.

c. *Failure to Investigate the Court Officer*

 Figueroa's third ineffective assistance claim asserts that Blackstone erred by failing to investigate the Court Officer's conduct. Figueroa again concedes that he did not fairly present the claim to the state courts, but urges the Court to review it in the interest of justice. The Court concludes that Figueroa's claim is unexhaust-

ed, but should nevertheless be denied on the merits. *See* 28 U.S.C. § 2254(b)(2).

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *See Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. Figueroa fails to identify any specific deficiencies that fell outside the "wide range of professionally competent assistance" in Blackstone's performance. *Id.* Instead, Figueroa's own Petition points out that Blackstone moved for a mistrial after learning of the Court Officer's behavior. Figueroa goes on to note that Blackstone successfully persuaded the Trial Court to conduct an individual voir dire with each juror to determine whether the jury had been contaminated by the Court Officer's conduct. Even after the Trial Court determined that the jury was not aware of the Court Officer's behavior, Blackstone returned to the issue again, asserting, "there is a potential ... of very serious contamination of this jury and I am again renewing my motion for a mistrial." (Petition at 19.) That the Trial Court again denied the motion does not show that Blackstone committed unprofessional error. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Thus, Figueroa has not established under the first *Strickland* prong that Blackstone's performance fell below objectively reasonable standards.

Figueroa also fails to satisfy the second *Strickland* prong because he "has made only the most conclusory assertions with respect to [counsel's] shortcomings and the likely effect of these alleged deficiencies on the jury's verdict." *Cheng Chui Ping v. Willingham*, 746 F.Supp.2d 496, 500 (S.D.N.Y.2010) (*quoting United States v. Feyrer*, 333 F.3d 110, 120 (2d Cir.2003) (internal quotation marks omitted)). Paradoxically, Figueroa acknowledges that Blackstone moved for a mistrial because of the difficulties he encountered while attempting to investigate the Court Officer, but nonetheless goes on to assert that trial counsel "never intended to investigate" the Court Officer's conduct. (Petition at 49.) Figueroa's assertion does not in any way illustrate that Blackstone's performance prejudiced the trial's outcome. Consequently, the Court rejects Figueroa's claim that trial counsel was ineffective for failing to investigate the Court Officer.

### 3. *Court Officer Claim*

■ Finally, Figueroa claims that his right to a fair trial under the Fourteenth Amendment was violated because the Court Officer allegedly (1) threatened Lopez, (2) threatened Figueroa's family and (3) was acquainted with Brown. The Appellate Division rejected Figueroa's claim, holding that the Trial Court properly exercised its discretion in concluding that Figueroa's rights were not violated because the jury was not aware of the Court Officer's conduct.

■ Under the Fourteenth Amendment, a fair criminal trial requires that "a jury's verdict must be based upon the evidence developed at the trial ... in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana*, 379 U.S. 466, 472–73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). The Appellate Division determined that the Court Officer's conduct did not deprive Figueroa of this basic protection. While the Court Officer's behavior may have been inappropriate, the Trial Court found that the problematic conduct occurred entirely outside the jury's presence. The Trial Court also conducted an individual voir dire and confirmed that the jury was not aware of the Court Officer's behavior. Consequently, the Appellate Di-

vision reasonably applied *Turner* in concluding that Figueroa was not deprived of a fair trial because the jury's verdict was not influenced by the Court Officer's behavior.

Figueroa asserts that *Webb v. Texas,* rather than *Turner,* governs. The Supreme Court held in *Webb* that a criminal defendant's Fourteenth Amendment right to a fair trial was violated when a judge threatened a witness with future prosecution if he provided certain testimony. 409 U.S. 95, 98, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). The judge's remarks "exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify." *Id.* In contrast to *Webb,* the threatening remarks at Figueroa's trial were made by the Court Officer, who is not vested with the same level of authority as the presiding judge. In any event, Lopez apparently did not experience duress, as she continued to offer consistent testimony both before and after the Court Officer's interactions with her and Figueroa's family. Therefore, even assuming *Webb's* relevance, the Court would find that the Appellate Division's decision was not an unreasonable application of *Webb.* The Court therefore concludes that Figueroa is not entitled to habeas relief.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the petition (Docket No. 1) of petitioner Frank Figueroa ("Figueroa") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.

As Figueroa has not made a substantial showing of a denial of his constitutional rights, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lucidore v. N.Y. State Div. of Parole,* 209 F.3d 107, 111–13 (2d Cir.2000). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**