OPINION OF THE COURT
Theresa M. Ciccotto, J.
Plaintiff Forest Rehabilitation Medicine PC commenced the instant action against defendant insurance carrier to recover $3,490 in payment for the rendering of first-party no-fault medical benefit services to its assignor, Tracy Fertitta, pursuant to article 51 of the Insurance Law. The sole issue for this court’s determination is the medical necessity of “Calmare pain therapy,” also known as “scrambler therapy,” a relatively new and controversial form of treatment that has divided the medical field. Indeed, after a review of the testimony adduced at trial and the exhibits admitted in evidence, the apparent first impression question that must be determined is whether this form of therapy is merely another form of “junk science,” or a revolutionary form of pain management that demands and deserves acceptance.
Background
A bench trial was held before this court on February 10, 2014. Due to scheduling difficulties, said trial continued and culminated on May 14, 2014. Prior to the commencement of testimony, the parties stipulated to the establishment of plaintiffs prima facie case, noting that defendant issued a timely denial of the claims asserting medical necessity as its defense. Additionally, the parties stipulated to various exhibits being admitted in evidence, including the claim forms, treatment records, medical records, defendant’s denials, and the peer review of Dr. Ayman Hadhoud. Neither party requested a Frye hearing, pursuant to Frye v United States (293 F 1013 [DC Cir 1923]).
The assignor, Tracy Fertitta, 35 years of age, was involved in a motor vehicle accident on May 12, 2011. Subsequent to the accident, she complained of pain in her neck, right arm, lower back, right leg, right shoulder and right knee. She eventually came under the care of Dr. Christopher Perez, M.D., a founding partner along with Jack D’Angelo, M.D., of plaintiff Forest Rehabilitation Medicine PC. Dr. Perez’s diagnosis relevant to the instant action was essentially right sided cervical and lumbar radiculopathy. His examination of Ms. Fertitta’s cervical spine, lumbosacral spine and right shoulder revealed tenderness and limited range of motion in all three areas. Consequently, Dr. Perez ordered an EMG of the upper extremities, advised Ms. *478 Fertitta to engage in a course of physical therapy, to perform various home exercises, and to take analgesics as necessary. On December 21, 2011, Ms. Fertitta met with Dr. Perez to discuss the potential efficacy of treatment utilizing MC-5A Calmare pain therapy to treat her lumbar and cervical regions.
While the witnesses proffered by both plaintiff and defendant attempted to explain the specifics of the subject therapy, the court found a more precise explanation contained in a document entitled “Letter of Medical Necessity for Scrambler Therapy data submission based on New York State Insurance Commission Guidelines and insurance carrier requirements,” contained in a packet of documents admitted into evidence as plaintiffs exhibit No. 1. Said document was prepared presumably for insurance purposes.
Under the phrase “Technology Description,” it states:
“[T]he MC-5A, using Scrambler Therapy Technology, Calmare Pain Therapy Treatment is a noninvasive method for rapid treatment of high-intensity oncologic, neuropathic, and drug resistant pain through a biophysical rather than a biochemical manner. The method incorporates a multiprocessor apparatus for electronic nerve stimulation, and uses the nerve fibers as a passive means to convey a message of normality to the nervous system by a procedure defined as scrambling or tricking of information, which then enables the nervous system to modify the reflex adaptive responses — referred to as TEMPR — Transcutaneous Electrical Modulation Pain Reprocessor .... In neuropathies there are complex reactions that modify the homeostatic equilibrium of pain system. In such a context, the Scrambler Therapy (ST5) interferes with the pain signal transmission, by mixing ‘non-pain’ information into the nerve fibers. The ST5 consists of a multiprocessor apparatus able to stimulate 5 artificial neurons by the application of surface electrodes on skin pain areas.”
The subject assignor, Ms. Fertitta, received one treatment on each of the following days: December 12, 2011, December 13, 2011, December 14, 2011, December 15, 2011, December 16, 2011, December 19, 2011, December 20, 2011, December 21, 2011, December 22, 2011 and December 23, 2011. The billed amount for each day was $349. The treatments were submitted to Allstate under code 64999, which is the category utilized for an “unlisted neurological procedure.”
*479 Defendant called Dr. Ayman Hadhoud, a board certified specialist in the field of physical medicine and rehabilitation, as its sole witness. Initially, Dr. Hadhoud explained that the name “Calmare” is the name of a scientist responsible for the development of this therapy, whose name was then adopted by the manufacturer as the name for the particular mechanical device used in conjunction with the administration of the subject treatments. The court takes judicial notice that in the Italian language, the term “calmare” means “to soothe.” Dr. Hadhoud also testified that this subject course of treatment has mainly been used in treating patients receiving chemotherapy, a fact which he felt rendered it inapplicable in a clinical context. Thus, he testified that he reviewed all the available data concerning the treatment of Ms. Fertitta as a result of the accident, and concluded that the Calmare scrambler pain therapy treatment was not medically necessary. He also indicated that he found the subject treatment medically questionable in that Ms. Fertitta’s symptoms could be appropriately and sufficiently treated with basic physical therapy, and that pain and inflammation relief could easily be achieved with the use of regular oral analgesics.
Additionally, Dr. Hadhoud testified that because a no-pain message is transmitted to the nerve via the application of electrodes to the skin in close proximity to the area of pain, the subject treatment is merely just another form of physical therapy, wherein the primary goal is to reduce pain and inflammation. Thus, the numerous mechanisms, i.e., whirlpool, heat, and electric stimulation, which are regularly applied in physical therapy sessions would clearly be preferable and cheaper forms of treatment. Moreover, Dr. Hadhoud opined that since Calmare scrambler pain therapy is essentially physical therapy, any bills generated from its usage should be included in a fixed physical therapy fee.
Lastly, and most importantly, Dr. Hadhoud recited the definition of “medical necessity,” promulgated by the American Medical Association Policy Statement H-320.953 (Oct. 2000):
“services or products that a prudent physician would provide to a patient for the purpose of preventing, diagnosing, or treating an illness, injury, or its symptoms in a manner that is: (1) in accordance with generally accepted standards of medical practice; (2) clinically appropriate in terms of type, frequency, extent, site, and duration; and (3) not *480 primarily for the convenience of the patient, physician, or other health care provider.”
In response to Dr. Hadhoud’s testimony, plaintiff called a rebuttal witness, Jack D’Angelo, M.D., whose area of expertise is also physical medicine and rehabilitation. Dr. D’Angelo testified that Calmare scrambler pain therapy can be simplistically described as a computerized device which uses a biophysical in lieu of a biochemical approach. A “no pain” message is transmitted to the nerves via disposable surface electrodes applied to the skin in the area of the patient’s source of pain. Scrambler therapy synthesizes 16 different types of nerve patterns which override chronically aberrant signals of chronic pain with normal signals emanating from the brain. Hence, the no-pain message replaces the pain message, essentially cancelling out the pain message.
Dr. D’Angelo further testified that the goal of said therapy is to reduce a patient’s level of pain to a zero level/zone. Dr. D’Angelo conceded the fact that this type of therapy is essentially new. Nevertheless, he emphatically asserted that it has gained wide acceptance in the medical community, and has received approval by the Food and Drug Administration (FDA), for use in chemotherapy induced neuropathy as well as diabetic neuropathy. Moreover, he testified that the Calmare device has also been a European CE marked certified pain therapy medical device for the noninvasive treatment of neuropathic and oncologic pain. Dr. D’Angelo also testified that one third of Calmare devices are currently being utilized by the military, and independent studies are in the process of being conducted by the Mayo Clinic as well as Stanford University. More responsive to the concept of no-fault benefits, he testified that said device has also been approved by the Workers’ Compensation Medical Fee Schedule on a case by case basis.
Dr. D’Angelo explained that with scrambler therapy, the usual protocol is to start with 10 45-minute treatments applied to the “problem area.” He testified that Ms. Fertitta’s pain level was closely monitored after each session. When she initially began treatment, her pain level was five to six. However, upon the completion of said therapy, her pain level had actually been reduced to a three. It should be noted that Dr. D’Angelo conceded that it was too early to be able to render an opinion as to the potential long-term benefits of Calmare scrambler therapy.
*481 Conclusions of Law
A denial of no-fault coverage premised on a lack of medical necessity must be supported by competent evidence, such as an independent medical examination or peer review, or other proof, which sets forth a factual basis and a medical rationale for denying the claim (see Healing Hands Chiropractic, P.C. v Nationwide Assur. Co., 5 Misc 3d 975 [Civ Ct, NY County 2004]; Bajaj v Progressive Ins. Co., 14 Misc 3d 1202[A], 2006 NY Slip Op 52387[U] [Civ Ct, Queens County 2006]).
Where a plaintiff provider proves that it timely submitted completed no-fault claim forms setting forth the facts and amount of the loss sustained, and that payment of the no-fault benefits are overdue, the provider establishes a prima facie case of medical necessity (West Tremont Med. Diagnostic, P.C. v GEICO Ins. Co., 13 Misc 3d 131[A], 2006 NY Slip Op 51871[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2006]). However, ‘‘[w]here the defendant insurer presents sufficient evidence to establish a defense based on the lack of medical necessity, the burden shifts to the plaintiff which must then present its own evidence of medical necessity” (2006 NY Slip Op 51871[U], *2, citing Prince, Richardson on Evidence §§ 3-104, 3-202 [Farrell 11th ed 1995]; see also Delta Diagnostic Radiology, P.C. v American Tr. Ins. Co., 18 Misc 3d 128[A], 2007 NY Slip Op 52455[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2007]).
It has been held that a peer review’s medical rationale is insufficient if it is unsupported by or controverted by evidence of medical standards or generally accepted practice (see Bajaj v Progressive Ins. Co., 14 Misc 3d 1202[A], 2006 NY Slip Op 52387[U] [Civ Ct, Queens County 2006]; CityWide Social Work & Psychological Servs. v Travelers Indem. Co., 3 Misc 3d 608 [Civ Ct, Kings County 2004]; Nir v Allstate Ins. Co., 7 Misc 3d 544 [Civ Ct, Kings County 2005]). “Generally accepted practice is that range of practice that the profession will follow in the diagnosis and treatment of patients in light of the standards and values that define its calling” (CityWide Social Work & Psychological Servs. v Travelers Indem. Co. at 616).
In the instant case, the court finds that despite the fact that Dr. Hadhoud’s expert testimony included a factual basis and a medical rationale for his opinion, this is insufficient to establish a lack of medical necessity for the Calmare pain therapy rendered (see A-Quality Med. Supply v GEICO Gen. Ins. Co., 39 Misc 3d 24 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2013]; PSW Chiropractic Care, P.C. v Maryland Cas. Co., 32 *482 Misc 3d 144[A], 2011 NY Slip Op 51719[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011]). It seems that Dr. Hadhoud’s main problem with Calmare pain therapy is that it is not cost effective.
The court, despite extensive research, was unable to locate any reported cases involving the issue of the medical necessity of Calmare scrambler therapy. In order to ascertain the medical necessity of Calmare scrambler therapy, the court must determine if it is generally accepted as reliable science.
The Court in Marsh v Smyth (12 AD3d 307, 310 [1st Dept 2004]) instructed that
“[t]he important purpose of the Frye test is to ensure that courts do not rely upon an expert’s testimony regarding a novel procedure, methodology or theory unless it has been ‘generally accepted’ within the relevant scientific community as leading to reliable results (see People v Angelo, 88 NY2d 217, 223 [1996]). The focus of the Frye test is to distinguish between scientific principles which are ‘demonstrable’ and those which are ‘experimental’ (see People v Wesley, 83 NY2d 417, 422 [1994], quoting Frye, 293 F at 1014). The Wesley court went on to emphasize that ‘the particular procedure need not be “unanimously indorsed” by the scientific community but must be “generally acceptable as reliable” ’ (83 NY2d at 423, quoting People v Middleton, 54 NY2d 42, 49 [1981])” (see also Lugo v New York City Health & Hosps. Corp., 89 AD3d 42, 56 [2d Dept 2011]).
Therefore, this court in applying the Frye standard finds that the evidence presented by the experts regarding Calmare scrambler therapy is reliable.
The court is not unduly concerned by the fact that Dr. D’Angelo testified that he could not comment with any semblance of certainty as to the long-term effects of Calmare scrambler therapy treatments. Nor is the court unduly concerned with the current lack of information concerning the potential adverse effects of prolonged treatments. It is common knowledge that most if not every type of medication on the market has potential adverse side effects. Indeed, every commercial on television advertising medication for various ailments comes replete with unnerving warnings about the potential adverse side effects of said medication. After viewing some of these commercials, one has to wonder if the ailment might not be preferable to the cure.
*483 In all frankness, the court is fascinated with the entire concept of Calmare scrambler therapy. It has found that the Calmare device is approved by the FDA for marketing in the United States. According to the official FDA website, an FDA 510 (k) classification essentially clears a medical device for commercial distribution. For a medical device to be approved by the FDA, pursuant to 21 USC § 360c (a) (3) (A):
“the effectiveness of a device is, for purposes of this section ... to be determined, in accordance with regulations promulgated by the Secretary, on the basis of well-controlled investigations, including 1 or more clinical investigations where appropriate, by experts qualified by training and experience to evaluate the effectiveness of the device, from which investigations it can fairly and responsibly be concluded by qualified experts that the device will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling of the device.”
Furthermore, 21 USC § 360c (a) (3) (B) provides:
“If the Secretary determines that there exists valid scientific evidence . . .
“(i) which is sufficient to determine the effectiveness of a device, and
“(ii) from which it can fairly and responsibly be concluded by qualified experts that the device will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling of the device,
“then, for purposes of this section . . . the Secretary may authorize the effectiveness of the device to be determined on the basis of such evidence.”
Additionally, the FDA, pursuant to 21 USC § 360c (a) (3) (A) and (B), also requires the individual or entity seeking approval of a device to provide adequate, well-controlled investigations which include clinical investigations by qualified experts who, by possessing the necessary training and expertise, can conclude that the device in question will have the effect it purports to have when used as directed (see also 21 USC § 355 [d] [setting forth the “substantial evidence” required for approval of a new drug]).
The court finds unavailing the fact that no specific evidence that Calmare scrambler pain therapy is widely accepted in the medical field for the treatment of neurological pain has been *484 presented. The court notes that no real evidence of nonacceptance has been presented. What is significant and noteworthy is that evidence of independent testing was presented which demonstrated that Ms. Fertitta’s pain level decreased following the administration of Calmare scrambler pain therapy treatments.
The court certainly recognizes that anything new, whether it be a mechanical device or a scientific theory, will inevitably have “kinks” which need to be worked out over time. However, this fact should not fuel any unreasonable fear or disapproval of a device which has the potential to literally revolutionize how the medical field addresses and combats chronic pain.
Therefore, in consideration of this, the court finds no reason to deny the instant claim for reimbursement. The court finds that Calmare scrambler therapy, in the instant action, was a medical necessity for Ms. Fertitta’s pain management.
Accordingly, it is hereby ordered that judgment in the amount of $3,490, in addition to attorney’s fees and statutory interest, is awarded to plaintiff Forest Rehabilitation Medicine PC as assignee of Tracy Fertitta.