People v Moloney (2024 NY Slip Op 24166)

[*1]

People v Moloney

2024 NY Slip Op 24166

Decided on June 6, 2024

County Court, Putnam County

Molé, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on June 6, 2024
County Court, Putnam County

The People of the State of New York,

against
Daniel G. Moloney, Jr., Defendant.

Sci No. 213/2017

Law Offices of Joseph J. Tock 
Attn: Joseph J. Tock, Esq. & Peter J. Reynolds, Esq.
Attorneys for Defendant
963 Route 6
Mahopac, NY 10541
Putnam County District Attorney's Office
Attn: Chief ADA Chana G. Krauss
40 Gleneida Avenue
Carmel, NY 10512

Anthony R. Molé, J.

The following papers were read and considered on the motion (mot. seq. no. 1) of defendant DANIEL G. MOLONEY, JR., made pursuant to CPL 410.90, requesting an early termination of his sentence of probation:
Papers
• Notice of Motion; Affirmation in Support, Exhibits A-C
• People's Affirmation in Opposition; Probation Officer Affidavit of Charleen Effinger
• Reply Affirmation
Upon review of the foregoing papers, the case file, and record, the Court finds and determines as follows:
I. Background
In March 2017, defendant waived indictment by grand jury, consented to being prosecuted by a superior court information (SCI), and entered a plea of guilty to sexual abuse in the first degree under Penal Law § 130.65 (1). Defendant's conviction stems from nonconsensual acts committed against a female victim who was a minor at the time of the offense, when defendant was 30 years old.
In July of 2017, defendant was sentenced to shock probation, consisting of six months in jail, to be followed by 10 years of postrelease supervision (see Penal Law 65.00 [3] [b] [iii]). In addition, the sentencing court (Hon. James T. Rooney, J.C.C. [retired]) designated defendant a level one sex offender pursuant to the Sex Offender Registration Act (Correction Law art 6-C; [*2]hereinafter SORA).[FN1]
 Defendant's status as a sex offender requires imposition of additional special conditions, as well as SORA registration requirements.
On May 11, 2021, the Putnam County Department of Probation filed a violation of probation (hereinafter VOP), alleging that phone monitoring software captured nude images on defendant's cellphone. Such was a violation of his probation as a level one sex offender. This Court issued a declaration of delinquency in light of defendant's probation violation (see generally CPL 410.30).
On July 7, 2021, defendant admitted to the VOP, conceding that he unlawfully possessed images of nudity on his cellphone in violation of his special conditions of probation. Consequently, this Court vacated the declaration of delinquency, restored probation, and extended defendant's probationary sentence to 57 days—representing the period of time between the filing of the declaration of delinquency and defendant's admission on the VOP. An Order, dated February 7, 2022, was issued to that effect modifying the term of probation with a maximum expiration date of May 14, 2027 (see Penal Law § 65.00 [4]).
Now, defendant moves, pursuant to CPL 410.90,[FN2]
for an order to terminate his sentence of probation earlier than the scheduled date of expiration. Defendant filed the instant motion on April 26, 2024. The People, in turn, filed opposition papers on May 20, 2024. Reply papers were filed by defendant on May 28, 2024.
II. Discussion and Analysis
We start with the premise that "[i]f language of a statute is plain and free from ambiguity, and expresses single definite and sensible meaning, words cannot be interpreted[,] and courts have no authority to add to the language of law" (McKinney's Cons. Laws of NY, Book 1, Statutes § 73, NY Annotations at 43 [2018 ed]; see County of Putnam, NY v State of New York, 17 Misc 2d 541, 545 [Ct Cl 1959]). In adhering to longstanding principles of statutory construction, "courts are obliged to interpret a statute to effectuate the intent of the Legislature, and when the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words used" (People v Brown, 115 AD3d 155, 158 [2d Dept 2014], affd 25 NY3d 247 [2015] [citations omitted]).
"CPL 410.90 (3) provides [the] mechanism for favorable termination of a sentence of probation prior to its completion" (People v Weinflash, 33 AD3d 559, 560 [1st Dept 2006], lv denied 8 NY3d 886 [2007]). The applicable statute provides that "[t]he court shall grant a request for termination of a sentence of probation under this section when, having regard to the conduct and condition of the probationer, the court is of the opinion that: (i) the probationer is no longer in need of such guidance, training[,] or other assistance which would otherwise be administered through probation supervision; (ii) the probationer has diligently complied with the terms and conditions of the sentence of probation; and (iii) the termination of the sentence of probation is not adverse to the protection of the public" (CPL 410.90 [3] [a] [emphasis added]; see People v Pondi, 65 Misc 3d 1206[A], *1 [Co Ct, Sullivan County 2019]). Clearly, this statute is written in the conjunctive form and contains a three-factor test. Such must be applied with equal force here.
The statute, after weighing the appropriate factors, provides the Court with broad discretion in making the final determination upon considering the enumerated factors. Unquestionably, the undersigned "has the ability to 'terminate the period of probation sooner in accordance with the [C]riminal [P]rocedure [L]aw' if the court is satisfied" that all three prongs of CPL 410.90 (3) (a) have been met (People v Teri W., 31 NY3d 124, 129 [2018], quoting Penal Law § 65.00 [3] [internal brackets omitted]).
Turning to the merits of his motion, defendant contends that he is entitled to an early termination of probation based on his personal circumstances and collective considerations. Defendant claims that the VOP admission is in some ways a misnomer, and was an isolated incident, because the three nude photographs he possessed are of an adult woman who he has been in a relationship with for years.
Secondarily, defendant asserts that he has transformed himself since the conviction because he was immature, naïve, abused alcohol at the time of the sexual offense, and he has been a law-abiding citizen since then. In advancing that he has satisfied the requisite criteria on this motion and matured as a person, defendant believes that he has diligently complied with the terms and conditions of probation, that he is no longer in need of guidance and training, and granting his application would not be adverse to the protection of the community. Defendant also points to the fact that he would still be subject to the SORA registration requirements for another 12 years.[FN3]
Lastly, defendant claims that his professional business endeavors involve interactions with the United States and foreign governments, and being on probation presents a "complication" that extends to him and the livelihood of his employees.
The People, along with the Probation Department, oppose defendant's motion for an early termination of probation. In their opposition papers, the People outline a disturbing factual narrative of the underlying offense which defendant pled guilty to. The People claim that the VOP was not an isolated occurrence and that defendant has had several incidents of problematic behavior resulting in sanctions against him. Further, the People assert that defendant was unsuccessfully discharged from his sex offender treatment program at Empire State Forensics due to his behavioral change and lack of progress. The People thus maintain that defendant has failed to demonstrate the necessary requirements warranting an early termination of probation.
A. Defendant's Submissions
In support of his motion, defendant submits an email correspondence from the woman he has been in a relationship with as it pertains to his VOP admission; a letter from defendant's primary therapist, Robert Turner (a licensed master social worker); and several character reference letters supporting defendant's application. The People counter with the affidavit of Charlene Effinger, senior probation officer with the Putnam County Probation Department.
B. The Court's Findings and Determination
Precedent dictates that it is ultimately this Court's responsibility to discharge defendant from probation before completion of the term should the undersigned find that continuous supervision is no longer necessary (see People v Rodney E., 77 NY2d 672, 676 [1991]). The text, structure, and legislative history, as well as a straightforward application of canons of statutory [*3]construction, all confirm as much (see id.; see also CPL 410.90).
Prefatorily, the Court has taken into consideration the character reference letters in support of defendant—which all say positive things about defendant and how he has changed since his conviction. The Court has also considered defendant's current "conduct and condition" as compared to his status in 2016 when he committed the crime (CPL 410.90 [3] [a]). The undersigned notes that defendant's progress and cooperation with probation, while commendable, does not give the undersigned confidence that defendant's probation should be prematurely ended.
As a preliminary matter, although defendant's reply papers reference an affidavit from defendant's girlfriend concerning the VOP admission, the Court notes that she sent an email correspondence to defense counsel, dated April 16, 2024, wherein she states, among other things, that she is emailing on behalf of the defendant and that the two have "been in a relationship for many years," during which time she has sent defendant photos of herself at her "own free will." She also states in the email that their relationship is of "great importance," that she has "never been coerced to send or do anything," and that defendant has "never paid [her] for photos or any of these things." Although the statements in the email correspondence may be sincere in addressing the nude photos that were discovered on defendant's cellphone in connection with the VOP, the statements were not set forth in a sworn affidavit. The Court declines to treat the email as a supporting affidavit (see generally CPLR 2106; 2214 [b]).
In contrast, senior probation officer Effinger, in a sworn affidavit, cites numerous incidents and problematic behaviors which necessitated an expansion of defendant's terms of probation. Among other statements, Effinger states in the affidavit that while only one VOP was filed against defendant, he was "sanctioned" for failing multiple polygraph tests which revealed that he was viewing adult pornography on his cellphone, frequenting disreputable erotic massage parlors, leaving the jurisdiction without approval, illegally paying for sexual services, and eliciting nude images from females. Effinger also describes an incident in 2019 when defendant was escorted from a hospital by security based on an interaction with a nurse who he had flirted with and kissed. All of this is concerning to the Court and gives the undersigned serious pause.
Defendant correctly points out in his reply papers that the alleged results of his polygraph tests would be inadmissible due to a lack of reliability. New York courts have long recognized that polygraph test results are not generally accepted as scientifically reliable. Defendant, however, overlooks the fact that this motion does not present a scenario where the People are attempting to improperly admit the results of his polygraph examinations into evidence during a trial or hearing (see People v Angelo, 88 NY2d 217, 223 [1996]; People v Shedrick, 66 NY2d 1015, 1018 [1985]; People v De Lorenzo, 45 AD3d 1402, 1402-1403 [4th Dept 2007], lv denied 10 NY3d 763 [2008]; People v Weber, 40 AD3d 1267, 1267 [3d Dept 2007], lv denied 9 NY3d 927 [2007]; see also People v Krivak, 78 Misc 3d 988, 1001 [Co Ct, Putnam County 2023] ["(p)olygraph examinations and their results are inadmissible during trials as they are not considered competent or reliable"]).
Secondarily, not to be overshadowed by defendant's transgressions during probation is the gravity and seriousness of the underlying offense. Defendant sexually abused a 14-year-old girl when he was 30 years of age. Applicable here, "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [b]y forcible compulsion" (Penal Law § 130.65 [1]). The term "sexual contact" is defined as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either [*4]party" (§ 130.00 [3]). According to the victim of this case who was a minor at the time, defendant forcefully kissed her, pulled her shirt up, fondled and "sucked on her breast," pulled her pants down, performed oral sex on her, and put his fingers inside of her vagina, despite the victim telling him to stop—all for the purpose of gratifying defendant's sexual desire.
Moreover, the Court notes that the letter from defendant's therapist, Turner, has some ambiguity insofar that the therapist states therein that he supports defendant's application for a "reduction in probation terms." It does not seem to support a full termination of probation. Turner's letter is unclear as to what is meant by "reduc[ing]" defendant's probation. Notably, Turner opines in the letter that defendant's "risk of re-offense has been mitigated to a degree that warrants consideration for a reduction in probation" (emphasis added). Reduction in defendant's probationary terms and conditions is starkly different from ending probation altogether. While noting that defendant has actively participated and exhibited significant improvement in individual sessions, Turner additionally states in the letter that defendant must "continue[ ] with the current frequency of therapy sessions . . . to maintain treatment gains and support his successful reintegration into society." Such leads the Court to conclude that defendant still requires further treatment. Without probation supervision, there would be no mechanism to ensure that defendant would continue to follow through with his treatment and therapy.
Defendant's further contention that his VOP occurred early in his period of his probation sentence is unavailing. Defendant was sentenced to probation in 2017. The VOP occurred in 2021—approximately four years into his probationary term. Furthermore, defendant's reason for seeking early termination seems to be based, in large part, on his employment. However, that is not a criterion specified in CPL 410.90; therefore, his assertion in this respect is unpersuasive.
Complying with probationary conditions does not, in and of itself, provide a firm basis to end probation—which has benefitted defendant to some degree. Defendant has served over seven years of a ten-year probation sentence. This Court opines that supervisory services are still necessary for defendant (compare People v Pondi, 65 Misc 3d 1206[A] at *2-3). Again, a judge must grant early termination if he or she "is of the opinion" that a defendant does not need guidance, training, or other assistance provided by probation; the probationer has diligently complied with the terms and conditions of probation; and termination is not adverse to the protection of the public (CPL 410.90 [3] [a]). As said above, the guiding statute essentially provides this Court considerable discretion in deciding the defendant's motion here (see generally People v Teri W., 31 NY3d at 129-130).
This Court concludes that termination from probation in this case would be inappropriate (see People v Muro, 2003 NY Slip Op 51114[U], *2 [Dist Ct, Suffolk County 2003]). This Court is not of the opinion that defendant has satisfied all three prongs of CPL 410.90 (3) (a).
First, defendant requires continued guidance and assistance. Based upon the information before it, this Court believes that defendant is still in need of guidance, training, and assistance of probation supervision to ensure that he successfully completes his therapy and treatment. Continued monitoring would better ensure that defendant presents a minimal risk of reoffending. Furthermore, the undersigned surmises that defendant is still in need of supervisory services to monitor his behavior (compare e.g. People v Pondi, 65 Misc 3d 1206[A] at *2-3). The Court, therefore, opines that leaving supervision in place remains the prudent cautionary measure (see People v Muro, 2003 NY Slip Op 51114[U] at *2; People v Ulerie, 2007 NY Slip Op 34155, *6-7 [Sup Ct, Kings County, 2007]).
The Court also finds that defendant has not diligently complied with the terms and [*5]conditions of his probation sentence, given his behavior and incidents during probation. His VOP occurred about four years into his probation sentence. Because of his transgressions and incidents during his probationary supervision, it also cannot be said with certainty that defendant has assiduously cooperated with all of the terms and conditions of his probation without any incident.
Finally, based on the explicit language of CPL 410.90 (3) (a) (iii), a probationary "sentence must not be terminated if it will be adverse to the protection of the public" (People v Thatcher, 75 Misc 3d 1219[A], *2 [City Ct, City of Poughkeepsie 2021] [emphasis added]). To that end, public safety still remains paramount from this Court's perspective.
Here, the Court finds that early termination of his probation sentence would be adverse to the protection of the public. Defendant's motion papers primarily highlight that he has complied in all respects with his probationary supervision. Though respecting defendant's personal belief, the Court is unconvinced given the serious nature of his violative, felonious conduct, the VOP, and inability to successfully complete sex offender treatment. The Court underscores that defendant admitted his guilt and was convicted of sexual abuse in the first degree—a serious criminal offense that requires SORA registration for 20 years (see Penal Law § 130.65 [1]; Correction Law § 168-h [1]; People v Muro, 2003 NY Slip Op 51114[U] at *2).
It is precisely defendant's offending conduct that put him in this position and gives the Court pause in prematurely granting his application. The Court is not satisfied that defendant does not pose at least some risk to the public. He has not successfully completed sex offender specific treatment to, at least, demonstrate a lowered risk of re-offense. In essence, there is no justification to believe that defendant no longer presents a danger to the community based on his prior criminal conduct. The undersigned does not perceive that he no longer poses a risk to the public.
All things considered, this Court is unconvinced by defendant's submissions. At most, defendant's submissions could arguably support the conclusion that he now presents less of a risk to the public from 2016, when he committed the underlying crime. The undersigned cannot conclude with certainty that terminating defendant's sentence of probation is not adverse to the protection of the public, as contemplated by CPL 410.90 (3) (a) (iii). The Court thus finds that an early termination of defendant's probationary supervision is contrary to protecting the public (see People v Thatcher, 75 Misc 3d 1219[A] at *2-3).
Finally, notwithstanding defendant's compliance with his probationary conditions, the undersigned remains "mindful of the finality" of terminating probation (People v Ulerie, 2007 NY Slip Op 34155 at *7 ["once a court terminates probation, the court lacks jurisdiction to resentence a defendant should he or she commit another crime or violate any condition previously imposed by the court"]). Stated differently, "[o]nce a sentence of probation is terminated, the sentence effectively expires[,] and the court is without authority to impose any other sentence" (People v John P., Jr., 294 AD2d 951, 952 [4th Dept 2002] [internal quotation marks and citation omitted]; see People v A.L., 78 Misc 3d 1239[A], *2 [Sup Ct, New York County 2023]). Prematurely ending probation at this juncture would prevent the Court from making any other orders in monitoring defendant should he commit a future crime in the interim or violate his probation. The Court expects—and hopes—that defendant will successfully complete the remainder of his probationary term without issue.
III. Conclusion
Given the severity of defendant's offense involving a sexual offense against a minor, the [*6]VOP and prior incidents during probation, and the potential risks associated with removing him from supervision, the Court cannot definitively conclude that the protection of the public would not be adversely impacted by granting his application, as is contemplated by CPL 410.90 (3). Completing his probationary sentence will ensure defendant's continued compliance and protect the public. Defendant's motion for an early termination of his sentence of probation is denied in all respects (see CPL 410.90 [3]; People v A.L., 78 Misc 3d 1239[A] at *2; People v Weitz, 37 Misc 3d 445, 446-460 [Sup Ct, New York County 2012]; People v Thatcher, 75 Misc 3d 1219[A] at *2-3; see also People v Muro, 2003 NY Slip Op 51114[U] at *2; ). Accordingly, it is hereby:
Ordered that the motion of defendant DANIEL G. MOLONEY, JR., made pursuant to CPL 410.90 (3), requesting an early termination of his sentence of probation, is DENIED.
The foregoing constitutes the opinion, decision, and order of this Court.
Dated: June 6, 2024
Carmel, New York
E N T E R:
Hon. Anthony R. Molé
Judge of the County Court

Footnotes

Footnote 1:The sentencing court issued a SORA decision and order dated July 13, 2017.

Footnote 2:CPL 410.90 (1) states, in pertinent part, that "[t]he court may at any time terminate . . . a period of probation . . . for conviction to a crime."

Footnote 3:Because defendant was adjudicated a level one sex offender, he is required to annually file his sex offender registration forms with the New York State Division of Criminal Justice Services "for a period of [20] years from the initial date of registration" (Correction Law § 168-h [1]).